IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN HOEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-00919(JDB) |
| ) | Oral Argument Requested |
| THE DISTRICT OF COLUMBIA, ) | |
| And CATHY LANIER ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS DISTRICT OF COLUMBIA AND CATHY LANIER'S CONSENT
MOTION FOR LEAVE TO SUPPLEMENT AND SUPPLEMENT TO THEIR
AMENDED MOTION TO DISMISS THE AMENDED COMPLAINT, AND/OR,
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

The Defendants District of Columbia and Chief Cathy Lanier, by and through the

undersigned counsel, and pursuant to Fed. R. Civ. P. 7(b), herein seek leave of Court to

supplement their amended motion to dismiss Plaintiff's Amended Complaint and/or

motion for summary judgment. These defendants have herein included their supplement

and proposed order as exhibits. As reasons for the supplement to their pending motions,

the Defendants state the following:

1.     The District of Columbia Court of Appeals has recently issued an opinion,

*Sims v. District of Columbia*, 2007 D.C. App. Lexis 581 (D.C. October 4, 2007)(attached

hereto) , which directly addresses Hoey's claim of an entitlement to the position from

which he was demoted;

2.     On or about December 14, 2007, the Office of Employee Appeals

(hereinafter the "OEA") issued an initial decision in *Hoey v. Metropolitan Police

Department* (attached hereto) which also addresses the issues raised before this Court.

.3.     The attached memorandum addresses the impact of the *Sims*

decision and explains why the OEA opinion in *Hoey v. Metropolitan Police Department*

is incorrect and should not be credited with any persuasive value.  In brief, plaintiff's

promotion to the position of Commander, an excepted service position with less job

protection and fewer rights and/or benefits, was invalid as a matter of law because

plaintiff did not waive his rights to remain in the Career Service.[1]  Furthermore, even

apart from the excepted service status of the position, the law is clear that the Chief of

Police had the authority to demote the plaintiff back to the rank of captain at her

discretion.  *See* D.C. Official Code § 1-608.01 (d-1).  Therefore, plaintiff is not entitled to

any federal damages or injunctive relief against these defendants.

4.     Plaintiff consents to the filing of this supplemental brief on these issues.

The Defendants District of Columbia and Chief Cathy Lanier have appended a

Memorandum of Points and Authorities in support of this supplement.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

---

[1] Plaintiff maintains that his personnel paperwork states that he is a Career Service employee, which is not relevant. See Amended Complaint, generally. Plaintiff's status is a legal question, not a factual inquiry. The defendants, in fact, do not dispute that he maintains his Career Service position as a Captain, but maintain that he was promoted into an Excepted Service position of Commander.

_____/s/Leah  Taylor_____
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 Fourth St., N.W., 6th Floor South
Washington, D.C.  20001
(202) 724-7854; (202) 727-6295

Local Rule 7(m) Certification

On December 28th 2007, undersigned counsel notified plaintiff of the relief

requested herein.  Plaintiff consents to leave to the defendants filing a supplemental brief

and the defendant consents to the plaintiff filing its response on or about January 8, 2007.

_____/s/_____
LEAH BROWNLEE TAYLOR
Assistant Attorney General, D.C.

3

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN HOEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-00919 (JDB) |
| | ) Oral Argument Requested |
| THE DISTRICT OF COLUMBIA, | ) |
| And CATHY LANIER | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS DISTRICT OF COLUMBIA AND CATHY LANIER'S CONSENT
MOTION FOR LEAVE TO SUPPLEMENT THEIR MOTION TO DISMISS THE
AMENDED COMPLAINT, AND/OR, IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT
AND SUPPLEMENT TO DEFENDANTS' DISPOSITIVE MOTION**

I.    Preliminary Statement

On August 1, 2004, plaintiff was promoted from the rank of Captain, a career

service position, to the rank of Commander, an Excepted Service position. *See* Affidavit

of Robin Hoey, at Docket Entry #8, Attachment 2, ¶ 5. *See also* D.C. Official Code § 1-

608(d-2)(1) and DPM § 872.5. Upon information and belief, plaintiff did not sign a

written waiver of his career service rights. *See generally* Affidavit of Robin Hoey. On

April 19, 2007, four months after her appointment as the new Chief of Police, defendant

Lanier demoted plaintiff from the rank of Commander to the rank of Captain. *See* Hoey

Affidavit at ¶ 10. Plaintiff subsequently filed suit challenging the action (while filing a

simultaneous challenge in the Office of Employee Appeals), and defendants moved to

dismiss that lawsuit on October 11, 2007.

As discussed in defendants' previously filed motion, the position of Commander is an Excepted Service, "at will," position within MPD, and has less job protection and fewer benefits than a career service position. Under D.C. Official Code § 1-608, §1-609.05; DPM §872.5 and DCMR 6A-800.7, Commanders "serve at the pleasure of the Chief of Police." Plaintiff Hoey did not possess a protected property or liberty interest in the position of Commander because by law it is an Excepted Service position. *See* D.C. Official Code § 1-609.05 ("Employees in the Excepted Service do not have any job tenure or protection"). Because these persons serve at the pleasure of the MPD's Chief, they can be removed at any time without cause and enjoy less job protection than career service employees. In addition, D.C. Official Code § 1-608.01 (d-1) provides that " the Assistant and Deputy Chiefs of Police and inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain ***when the Mayor so determines***. (emphasis added)"***.*** Deputy Chief is a position title that has long been understood to encompass Commanders. "District Commanders shall be of the rank of Deputy Chief." *See* MPD General Order 101.9, referenced in OEA decision *Hoey v. Metropolitan Police Department*, at pg. 8. This statutory provision provides independent justification for the demotion because it makes clear that the Chief of Police has the power to demote separate and apart from the Excepted Service classification of the position to which Hoey had been promoted. *See* D.C. Official Code § 1-608.01 (d-1)

Two recent decisions relate to the instant litigation. First, on October 4, 2007, the Court of Appeals issued *Sims v. District of Columbia*, 2007 D.C. App. Lexis 581 (D.C. October 4, 2007) (attached), which governs this case and confirms that plaintiff Hoey had no property interest in the Commander position from which he was demoted.

Specifically, *Sims* makes clear that a career service employee appointed to an Excepted Service position without waiving his career service rights (as in this case) does not maintain a vested, grandfathered right to the Excepted Service position; instead, under those circumstances, the promotion itself is invalid. Thus, Hoey would have had no entitlement or property right interest in his position as Commander. Absent such a property right, he would have no basis for any constitutional deprivation claim arising from his demotion.

In addition, on December 14, 2007, the OEA issued an initial decision in *Hoey v. Metropolitan Police Department*, finding that plaintiff Hoey maintained his career service status in his position of Commander with the Metropolitan Police Department and that, under the Comprehensive Merit Personnel Act (the "CMPA"), the plaintiff could only be demoted "for cause." *See* attached OEA decision. As explained infra, the OEA decision is contrary to existing statutory and regulatory law, which permitted the Chief of Police the discretionary authority to demote the plaintiff back to the rank of captain without cause. Accordingly, for the reasons previously stated in their dispositive motion, and the reasons set forth herein, the defendants are entitled to judgment as a matter of law on all claims set forth in plaintiff's Amended Complaint.

## II.    Argument

### A.    Defendants Seek Relief Under Fed. R. Civ. P. 7(b).

Fed. R. Civ. P. 7(b) provides that [a]n application to the court for an order shall be by motion…." Although the *Sims'* opinion was entered on October 4, 2007, these defendants did not have notice of the ruling at the time they filed their dispositive motion. Because the opinion governs this litigation, these defendants seek leave of Court to

supplement their dispositive motion to include the facts and law upon which the *Sims* opinion was based.

      B.    <u>Defendants Are Entitled to Dismissal and/or</u>
             <u>Summary Judgment As A Matter of Law</u>.

          1.    <u>Plaintiff's Promotion to the Excepted Service Position Was</u>
                 <u>Invalid, and He Did Not Have a Protected Interest In the</u>
                 <u>Commander Position</u>.

The *Sims* case governs and requires the dismissal of this action.  In *Sims,* plaintiff Nathaniel Sims, a former employee of the District of Columbia, was terminated from an Excepted Service position and reassigned to a career service position at a lower salary. *See Sims v. District of Columbia*, 2007 D.C. App. Lexis 581,* 2-*8 (D.C. October 4, 2007).  *Sims* challenged his demotion from the Excepted Service position as an Executive Director to a Career Service position, claiming that the District demoted him "without providing him the benefit of protections to which he claim to have been entitled" under the Comprehensive Merit Personnel Act (hereafter "the CMPA").  *Id.* at *8.  *Sims* contended that he held his Executive Director position as a Career Service employee and that the District's attempt to classify the Executive Director position as an Excepted Service position was erroneous.  *Id.* at *8.  On review from the Superior Court and OEA, the *Sims* Court adopted OEA's findings regarding plaintiff's appointment to an Excepted Service position.  Specifically, it ruled that plaintiff's appointment to the Executive Director position was invalid as a matter of law because his promotion violated 6 DMR §833.2, which governs changes to positions with fewer rights.  *Id.*  The *Sims* Court held that the plaintiff was not legally entitled to the position to which he was promoted or to the pay since he did not waive his rights to remain in the Career Service.  *Id.*

In the instant case, Hoey argues that he held the position of Commander as a Career Service employee, and that the District's attempt to reclassify the position as Excepted Service is erroneous.  *See* Amended Complaint, at Docket Entry #14.  Hoey's Excepted Service classification in the instant case is even clearer than the plaintiff in *Sims*, because District regulations state unequivocally that "Assistant Chiefs of Police, Commanders and Inspectors **are excepted** from Career Service who serve at the pleasure of the Chief of Police.  The Chief of Police has the discretion to return Assistant Chiefs of Police, Commanders and Inspectors to their previous rank/position." (Emphasis added).  *See* DPM § 872.5.  Just like the *Sims* plaintiff, Hoey did not waive his Career Service rights as a Captain when he accepted the position of Commander, an at-will position with less job protection and fewer rights and benefits than a Career Service position.  However, contrary to Hoey's position that his failure to waive permits him to retain an Excepted Service position with full Career Service protections against demotion, *Sims* makes clear that the promotion was invalid.   *See* 6 DMR §833.2 (1985).  Because plaintiff's promotion to the Commander position was invalid, he had no property interest in the Commander position.  *See* 6 DMR §833.2 (1985).  *See Sims*, *supra*.   Plaintiff, therefore, is not entitled to any damages or injunctive relief from these defendants.

## 2. The Chief of Police Was Authorized under the CMPA to Demote the Plaintiff Without Cause Even if His Promotion Was in the Career Service

Even if Hoey's appointment/promotion to Commander was to a career service position he could be removed and demoted without cause because of the express language of D.C. Code § 1-608.01 (d-1) which authorizes the Mayor (or his delegee) to demote a Commander to Captain at his or her discretion.  Notwithstanding the plain

language of this provision, on or about December 14, 2007, the Office of Employee

Appeals (herein after "OEA") found that plaintiff maintained his career service status in

his position of Commander with the Metropolitan Police Department and that under the

Comprehensive Merit Personnel Act (the "CMPA"), the plaintiff could only be demoted

"for cause."  *See* attached OEA decision.  Apart from the decision's misapplication of

DPM § 872.5, discussed in the prior section, the OEA decision is contrary to existing § 1-

608.01 (d-1), which allows the Chief of Police the discretionary authority to demote the

plaintiff back to the rank of captain without cause, separate and apart from the Excepted

Service status of the position.. Specifically, the provision provides that:

> For members of the Metropolitan Police Department and notwithstanding
> § 1-632.03(1)(B) or any other law or regulation, the Assistant and Deputy
> Chiefs of Police and inspectors shall be selected from among the captains
> of the force and shall be returned to the rank of captain ***when the Mayor
> so determines***. (***emphasis added).***

*See* D.C. Official Code § 1-608.01 (d-1).  MPD General Order 101.9, first promulgated in

1979, specifically states and the OEA decision acknowledged that "District Commanders

shall be of the rank of Deputy Chief." *See* MPD General Order 101.9, referenced in OEA

decision *Hoey v. Metropolitan Police Department*, at pg. 8.  On that basis, the OEA

rejected plaintiff's contention that a Commander could not be demoted back to the rank

of Captain and found that some Commanders could be returned back to the rank of

Captain. *See* OEA decision at 8.  The plaintiff, a District Commander, could be returned

to the rank of Captain under the delegated authority of the Chief of Police. *See* DCMR

6A-800.7 ("Subject to applicable law, rules, regulations, and orders of the Mayor or

directives pursuant to order of the Mayor, the Chief of Police shall have full power and

authority over the department and all functions, resources, officials, and personnel

assigned thereto."). *See* 6A-800.1  (The Chief of Police is the chief executive officer of

the Metropolitan Police Department, and . . . he or she shall be responsible for the proper

and efficient conduct, control, and discipline of the force.)

The OEA dismisses this argument in two lines of *ipse dixit* without addressing at

all the key language of this provision.  Specifically, the OEA asserts that effect of

defendants' position "would be to render the distinction between Career Service

employees and 'at-will' employees meaningless" and that the position "attacks the entire

rationale for the existence of the CMPA.  To begin with, the OEA ignores the fact that

the concept of a Career Service is a creature of statute subject to modification by statute if

the legislative and executive branches so choose.  By ignoring the plain language of the

statute, the OEA hearing examiner essentially substituted his own personal opinion of

what the law should mean rather than strictly following the literal and unambiguous

language of the law.

Further, the impact of defendants' position is not nearly as far reaching or

dramatic as the OEA claims.  Far from threatening the foundation of the Career Service,

defendants' position simply gives the Chief of Police the discretion to demote to captain

the individuals who occupy the highest leadership positions in the Department.  Because

those individuals maintain all other career service rights at and below the rank of captain,

the statute effects only a minor modification of the protections of the Career Service, and

the OEA's contention to the contrary is a gross exaggeration.

Given the obvious failure of the OEA to address the key language of the statute at

all, let alone in a reasonable way (and given the perfunctory nature of its conclusion that

section 872.5 is inconsistent with D.C. Official Code § 1-608.01 (d-1)), this Court is

clearly not bound by the OEA's decision on these issues. *See University of Tennessee v. Elliot*, 478 U.S. 788 (1986); *Springer v. District of Columbia*, 743 A.2d 1213, 1218-19 (D.C. 1999). Further, the OEA decision is not a final decision, but an initial decision subject to appellate review, and the ongoing administrative proceedings simply confirm the validity of defendants' exhaustion argument. *See* Notice of Appeal Rights, pg 1 of attached OEA decision. Finally, it is also important to note that the OEA decision is also contrary to the OEA's previous decision in *Fonville v. Metropolitan Police Department*, holding that a Commander position is an at will position. *See Fonville 9/24/02* OEA decision (attached).

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/ Patricia A. Jones_____
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

_____/s/ Leah  Taylor_____
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 Fourth St., N.W., 6th Floor South
Washington, D.C.  20001
(202) 724-7854; (202) 727-6295

IN THE UNTED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

ROBIN HOEY,                              )
                                         )
                Plaintiff,               )
                                         )
v.                                       )        Civil Action No. 07-00919(JDB)
                                         )
THE DISTRICT OF COLUMBIA,                )
                                         )
                Defendant.               )

ORDER

Upon consideration of the Defendants District of Columbia and Cathy Lanier's

Consent Motion for Leave to Supplement Their Motion to Dismiss the Amended

Complaint, the supplemental memorandum of points and authorities in support thereof,

the facts, the law and the record herein, and any opposition thereto, it is this _____day of

_____2007, and it is,

**ORDERED:** that the Defendants District of Columbia and Cathy Lanier's

Consent Motion for Leave to Supplement Their Motion to Dismiss the Amended

Complaint, or in the Alternative, Motion for Summary Judgment is hereby **GRANTED**

for the reasons set forth in their motion, and it is,

**FURTHER ORDERED:** that the defendants' supplement is hereby accepted for

filing.


_____
John D. Bates
United States District Court Judge

IN THE UNTED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

ROBIN HOEY,                              )
                                         )
            Plaintiff,                   )
                                         )
vi.                                      )          Civil Action No. 07-00919(JDB)
                                         )
THE DISTRICT OF COLUMBIA,                )
                                         )
            Defendant.                   )

ORDER

Upon consideration of the Defendants District of Columbia and Cathy Lanier's

Motion to Dismiss the Amended Complaint, the memorandum of points and authorities

in support thereof, their supplement, the facts, the law and the record herein, and any

opposition thereto, it is this __day of _____2007, and it is,

**ORDERED:** that the Defendants District of Columbia and Cathy Lanier's Motion

to Dismiss the Amended Complaint is hereby **GRANTED** for the reasons set forth in

their motion, reply and supplement; and it is,

**FURTHER ORDERED:** that the complaint in Civil Action No. 07-00919 is

hereby **DISMISSED WITH PREJUDICE.**


_____
John D. Bates
United States District Court Judge

Notice: This opinion is subject to formal revision before publication in the <u>District of Columbia Register</u>. Parties are requested to notify the Office Manager of any formal errors in order that corrections may be made prior to publication. This notice is not intended to provide an opportunity for a substantive challenge to the decision.

# THE DISTRICT OF COLUMBIA

## BEFORE

### THE OFFICE OF EMPLOYEE APPEALS

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| Robin Hoey ) | OEA Matter No. 1601-0074-07 |
|     Employee ) | |
| ) | Date of Issuance: December 14, 2007 |
|     v. ) | |
| ) | Joseph E. Lim, Esq. |
| Metropolitan Police Department ) | Senior Administrative Judge |
|     Agency ) | |
| ) | |

Theresa Quon Hyden, Esq., Agency Representative
J. Michael Hannon, Esq., Employee Representative

**INITIAL DECISION**

<u>INTRODUCTION</u>

On May 16, 2007, Employee, a former Commander in the Police force, filed a petition for appeal from Agency's final decision removing him from his position as Commander and demoting him to Captain. This matter was assigned to me on July 2, 2007. I conducted a Prehearing Conference on August 29, 2007, and Employee filed a motion for summary judgment. Agency submitted its response. The record is closed.

<u>JURISDICTION</u>

The Office has jurisdiction in this matter pursuant to D.C. Official Code § 1-606.03 (2001).

<u>ISSUES</u>

    1. Whether this Office has jurisdiction over this matter.

    2. If so, should Agency's action demoting Employee be upheld?

1601-0074-07
Page 2

## FINDINGS OF FACT

The following facts are undisputed:

1. Employee was a policeman for more than 22 years. He was first appointed as a police officer in the Career Service on December 16, 1985.

2. Effective January 16, 2000, Employee was promoted from the rank of Lieutenant to the rank of Captain. His personnel record DC Form 52 (Request for Personnel Action) indicated that he was in the Career Service.

3. Effective April 22, 2001, Employee was promoted from the rank of Captain to the rank of Inspector. Once again, his DC Form 52 indicated that he was in the Career Service.

4. On August 1, 2004, Employee was promoted from the rank of Inspector to the rank of Commander. As before, his personnel records DC Form 52 and DC Form 1 (Personnel Action) each indicated that he was in the Career Service. Although the Form 1 was barely legible, it clearly indicated that Employee was still in the Career Service. The Personnel Form 1 which documents this change under "Nature of Action/Code" states "Promotion," and not "Appointment." Likewise, the Request for Personnel Action, DC Standard Form 52, also states "Promotion" in the "Kind of Action Requested" field. Employee took command of the Sixth District.

5. Mayor-elect Adrian Fenty appointed Cathy Lanier as Chief of Police and the Council of the District of Columbia confirmed her appointment on April 3, 2007.

6. On April 19, 2007, Chief Lanier informed Employee that she was transferring him from the Sixth District to the D.C. Central Cellblock and reducing his rank from Commander to Captain. No reason was given. Instead, Chief Lanier informed Employee that he was an "at will" employee.

7. Agency cannot produce any documents, nor does it claim it possesses any documents that would show Employee was ever appointed into an Excepted Service position.

8. In all its communications to Employee, Agency never asserts that Employee was demoted for cause.

9. Employee appealed his demotion to the Office of Employee Appeals on May 16, 2007.

ANALYSIS AND CONCLUSIONS

Whether this Office has jurisdiction over this matter.

OEA Rule 629.2, 46 D.C. Reg. 9317 (1999) provides as follows: "The employee shall have the burden of proof as to issues of jurisdiction, including timeliness of filing." The jurisdiction of this Office is established by statute. *D.C. Official Code* § 1-606.03 (a) (2001) describes the jurisdiction of this Office. It states in relevant part:

> An employee may appeal [to this Office] a final agency decision affecting a performance rating which results in removal of the employee . . . [or] an adverse action for cause that results in removal, reduction in grade, or suspension for 10 days or more . . . or a reduction in force.

Additionally, D.C. Code § 1-617.1(b) states, in pertinent part:

> A permanent employee in the Career or Educational Service who is not serving a probationary period or an employee appointed under the authority of § 1-610.4(2) and serving for at least 1 year with average performance may be suspended from service for more than 30 days, reduced in rank or pay, or removed from the Service only for cause and only in accordance with the provisions of this subchapter and subchapter VI of this chapter.

Thus, members of the Career Service have a statutory right to be discharged only for cause.

Indeed, the above provision is amplified in Chapter 16 of the District Personnel Manual (DPM), which contains rules and regulations implementing the system of general discipline and grievances in the District government. At § 1600.1, the DPM states "[These provisions] apply to each employee of the District government *in the Career Service*." (Emphasis added.) Furthermore, at § 1601.1, the DPM further provides that:

> An employee covered by § 1600.1 may not be officially reprimanded, suspended, reduced in grade, removed, or placed on enforced leave, except as provided in this chapter or in Chapter 24 of these regulations. Except as otherwise required by law, an employee not covered by § 1600.1 is an *at-will employee* and may be subjected to any or all of the foregoing measures at the sole discretion of the appointing personnel authority. (Emphasis added.)

The City Council has created through legislation various categories of employees to serve the needs of the citizens. Among the various categories established are those of Excepted Service

employees and Career Service employees.

Career Service employees make up the bulk of the City's work force. In order to achieve organizational effectiveness, the City Council has instituted a positive approach toward employee discipline within the Career Service. This approach is codified, and requires that discipline be taken only for cause, after prior written notice, and with an opportunity to be heard. See D.C. Code § 1-616.51. Hence, employees in the Career Service are afforded due process rights in recognition that their employment is a property right. These protections include assurances that disciplinary actions may only be taken for cause. Prior written notice is required for any adverse action, and an opportunity to be heard within a reasonable time after any action is proposed. See D.C. Code § 1-616.52.

All officers employed in the Metropolitan Police Department are Career Service employees unless they are specifically appointed to the Excepted Service.

Excepted Service appointments are also created by statute. D.C. Code § 1-609.01 states:

> The qualifications for each Excepted Service position shall be developed and issued by the appropriate personnel authority in consultation with the Mayor. Each employee appointed in the Excepted Service (except those included in § 1-609.08) must meet the minimum standards prescribed for the position to which he or she is appointed. Each personnel authority may fill positions in the Excepted Service as provided in this subchapter. Excepted Service employees may be hired noncompetitively. Persons appointed to the Excepted Service are not in the Career, Educational, Executive, Management Supervisory or Legal Service.

These Excepted Service appointments are "intended to be an individual whose primary duties are of a policy determining, confidential, or policy advocacy character and who reports directly to the head of an agency." D.C. Code § 1-609.02. These employees have no tenure because they are intended to serve at the discretion of the executive.

With respect to the Metropolitan Police Department, the City Council provides that "the Chief of Police may designate up to 1% of the total number of authorized positions within the Metropolitan Police Department as Excepted Service policy positions, no more than 10 of which may be filled with sworn members or officers." D.C. Code § 1-609.03 (a) (2).

This distinction between a Career Service employee versus an Excepted Service employee is important because the removal of excepted service employees is governed by D.C. Code Ann. § 1-610.5 (1999 *Repl.*). Section 1-610.5 states:

Employees in the Excepted Service (other than those appointed under the authority of

§ 1-610.4) do not have any job tenure or protection.  After 1 year of average or above average performance as determined under subchapter XV of this chapter, persons appointed under the authority of this subchapter shall be entitled to a notice of at least 15 days when termination of service prior to the expiration date of appointment is contemplated, explaining the reason therefore. *The employee does not have any right to appeal the termination* . . . (Emphasis supplied.)

*See e.g. Leonard et al. v. Office of the Chief Financial Officer*, OEA Matter Nos. 1601-0241-96 *et al.* (February 5, 1997), ___ D.C. Reg. ___ (   ).

Thus, based on the above statutes, there are significant differences between these two classifications and the protections afforded employees.  Employees in the Excepted Service do not have any job tenure or protection, nor do they have any right to appeal a demotion.  They are at-will employees and may be removed from their position without cause or warning.  *Also see* D.C. Code § 1-609.04.  Additionally, Excepted Service employees do not have a "property interest protected by the Fourteenth Amendment." *See Mulhall v. District of Columbia*, 747 F. Supp. 15 (D.D.C. 1990).

Thus, "Career Service" employees in general are distinguished from "at-will" employees. If Employee is determined to be in the Excepted Service and therefore, an at-will employee, Agency can remove Employee without cause.  This Office has no jurisdiction over removals or demotions without cause and thus this case would be dismissed for lack of jurisdiction.

Conversely, if Employee never ceased to be in the Career Service, then this Office does have jurisdiction over this appeal.     Thus, Employee has the burden of proving that he is still a Career Service employee and not an excepted service employee.

At issue in this case is whether Employee's status changed from a Career Service employee to an "at-will" employee when he was promoted to the Commander position. This Judge is not persuaded that plaintiff underwent such a change in status.

The best evidence regarding Employee's status is his official personnel record.  Agency's own official records indicate that in every instance of Employee's promotion from Captain to Inspector to Commander, his position status remained Career Service.  Indeed, Agency does not deny that Employee's latest DC Form 1 indicated that he was promoted to a Career Service Commander position.  Agency itself admits it has nothing to show that Employee was ever appointed into an Excepted Service position. "An appointment is not made until the last act required by the person vested with the appointment power is performed." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803); *Goutos v. United States*, 552 F.2d 922 (Ct. Cl. 1976).

It is undisputed that Agency never performed any act required to transform Employee's position into an Excepted Service one.  But having failed to do so, Agency cannot now claim that Employee is no longer a Career Service employee, as the record establishes that Employee was never appointed to an Excepted Service position.

Accordingly, I conclude that since Employee was at all times in the Career Service, this Office has jurisdiction over his appeal of his demotion.

<u>If so, should Agency's action demoting Employee be upheld?</u>

Employee asserts that he is a Career Service employee of the District of Columbia who achieved the rank of Captain on January 16, 2000. There is no disagreement among the parties that the rank of Captain is a Career Service position. There is, however, disagreement as to whether his subsequent promotions to Inspector and then Commander were Career Service or Excepted Service positions. Crucial to Employee's Complaint is that Career Service employees cannot be demoted without cause. Employee insists that his promotions still retained him in a Career Service posture, and hence, he cannot be demoted from Commander all the way back to Captain without cause.

Agency argues that despite personnel records to the contrary, Employee's promotions to Inspector and then Commander were Excepted Service appointments, and thus, his demotion back to Captain without cause was expressly sanctioned by D.C. Official Code § 5-105.01 (a) and D.C. Official Code § 1-608.01 (d-1).

For the Metropolitan police force, there are additional statutes that govern the promotion and appointment of its members. D.C. Official Code §§ D.C. Official Code § 1-608.01 (d-1) and (d-2) (2001) states in pertinent part that:

§ 1-608.01. Creation of Career Service [Formerly § 1-608.1]
(d-1) For members of the Metropolitan Police Department and notwithstanding § 1-632.03(1)(B) or any other law or regulation, the **Assistant and Deputy Chiefs of Police and Inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines**.

(d-2) (1) The Chief of Police shall recommend to the Director of Personnel criteria for **Career Service promotions and Excepted Service appointments to the positions of Inspector, Commander, and Assistant Chief of Police** that address the areas of education, experience, physical fitness, and psychological fitness. The recommended criteria shall be the same for Career Service promotions and Excepted Service appointments to these positions. When establishing the criteria, the Chief of Police shall review national standards, such as the Commission on Accreditation for Law Enforcement Agencies. . . .

(Emphasis added).

This language is repeated in D.C. Official Code § 5-105.01 (2007):

§ 5-105.01. Appointments; assignments; promotions; applicable civil service provisions; vacancies [Formerly § 4-104]

(a) The Mayor of said District shall appoint to office, assign to such duty or duties as he may prescribe, and promote all officers and members of said Metropolitan Police force; . . . provided further, that **the Assistant and Deputy Chiefs of Police and Inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines.**

(b) (1) The Chief of Police shall recommend to the Director of Personnel criteria for **Career Service promotions and Excepted Service appointments to the positions of Inspector, Commander, and Assistant Chief of Police** that address the areas of education, experience, physical fitness, and psychological fitness. . . . The recommended criteria shall be the same for Career Service promotions and Excepted Service appointments to these positions.

(Emphasis added).

To support its position that all Commander positions are Excepted Service, Agency also cites the District Personnel Manual or Code of D.C. Municipal Regulations at 6 DCMR § 872 [Appointment to Inspector, Commander and Assistant Chief of Police] which provides that:

872.1 The Chief of the Metropolitan Police Department is vested with the authority to assign to duty and to appoint all officers and members of the Metropolitan Police Department.

(a) Consistent with the duty to maintain a force of the highest possible quality, **the Chief of Police may appoint qualified candidates** from within the Department, as well as seek and appoint qualified candidates from outside the Department, **to positions of** Assistant Chief of Police, **Commander,** and Inspector. (Emphasis added.)

872.5 **Assistant Chiefs of Police, Commanders, and Inspectors are excepted service employees, who serve at the pleasure of the Chief of Police. The Chief of Police has the discretion to return Assistant Chiefs of Police, Commanders, and Inspectors to their previous rank/position.** (Emphasis added.)

STATUTORY AUTHORITY: D.C. Code §§ 1-608.01 et. seq., -608.81 (2003); 2-139; 5-402, -801 et. seq.; Mayor's Orders 80-78, 97-88, 2000-83

The above regulation, however, does not necessarily conflict with the D.C. Code. In both

D.C. Official Code § 1-608.01 (d-1) and § 5-105.01, the City Council has expressly provided that Inspectors and Commanders of the MPD may either be Career Service or Excepted Service employees. 6 DCMR § 872 simply reiterates that appointed Commanders serve at the pleasure of the Police Chief.     Read in conjunction with the Code, it confirms that higher positions such as Commanders may either be Career Service positions or Excepted Service ones.  Notable is the fact that the regulation § 872 .5 does not insist that *all* Commanders are excepted service employees. Following on the heels of §872.1, which deals with appointed positions, it merely confirms that some Commander positions are appointed.

But even if the above regulation actually meant to include *all* commanders, then this regulation clearly conflicts with the enabling statute, which provided, at the time of plaintiff's demotion, "The Chief of Police shall recommend to the Director of Personnel criteria for Career Service promotions and Excepted Service appointments to the positions of Inspector, Commander, and Assistant Chief of Police." *D.C. Code § 1-608.01 (d-2) (1)* (2003).  When a regulation conflicts with its authorizing statute, the regulation is null and void. *See Davis v. Univ. of District of Columbia, 603 A.2d 849, 853 (D.C. App. 1992)*; *Tenants v. D.C. Rental Housing Comm's, 575 A.2d 1205, 1213 (D.C. App. 1990)* ("a statute defines the rights of the [parties] and fixes the standard by which the rights are measured.")(internal quotations omitted). A statute that lists a specific position or makes specific exceptions is a "classic example of a legislative action that, by its very nature, purports to be exclusive and thus clearly suggests that the legislature has thought about the particular matter omitted." *In re M.M.D., 662 A.2d 837, 852 (D.C. 1995)*.

In his Motion for Summary Disposition, Employee argues that because the position of Commander is "notably absent" from the list of the positions which may be returned to the rank of Captain in sections 1-601.01(d-1) and 5-105.01(a), he could not be demoted without cause.

Although D.C. Official Code § 1-608.01 (d-1) and D.C. Official Code § 5-105.01 does not specifically mention the position of "Commander," MPD General Order 101.9 clarifies that District Commanders are of the rank of Deputy Chief.  The General Order, which was first promulgated in 1979 and continues in effect to the present, states that:    **"District Commanders shall be of the rank of Deputy Chief ...."**  (emphasis added).  Thus, contrary to Employee's contention, some Commanders may indeed be returned to the rank of Captain at the Police Chief's discretion.

In the alternative, Agency argues that even if some Commanders are Career Service employees as Employee contends in his Motion for Summary Disposition, the Chief of Police[1] is

---

[1] On May 16, 1997, the Mayor delegated his discretionary authority over MPD officials above the rank of captain to the Chief of Police.  See Mayor's Order 97-88 (5/9/97), 44 D.C. Reg. 2959-2960 (5/16/97), attached as Exhibit G. Mayor's 97-88 provides in relevant part that:

> The Chief of Police is also delegated * * * [a]uthority under [D.C. Official Code, §5-105.01 (2001)] to appoint to office, assign to duty and promote all officers and members of the Metropolitan Police Department as provided in that section.

nevertheless authorized to return District Commanders to the rank of Captain at his or her discretion, without cause, under the above cited Codes.

Agency's final argument is that a literal reading of §§ 1-608.01 and 5-105.01 would produce absurd results. Agency states that an interpretation whereby some Commander positions are "at-will" and others are not would greatly reduce any flexibility the Chief of Police has in shaping her command staff to reflect her policy preferences and priorities. Since the Deputy Chief position was renamed "Commander" in 1997, Commanders have made up anywhere between 48-55% of the command staff.[2]  Agency points out that if *D.C. Official Code* §§ 1-608.01 and 5-105.01 are strictly construed to mean that some Commanders are not discretionary positions and only subject to demotion after an adverse action proceeding, then any incoming Police Chief would be unable to remove half of his/her predecessor's command staff, without significant loss of time and money, or to bring in Commanders of his/her own choosing to implement his/her vision of the Department. Such a daunting roadblock to change is absurd and completely unworkable.

Although that may be so, to adopt Agency's position that Police Chief should have the power to demote any of her staff, whether or not they are Career Service, would be to render the distinction between Career Service employees and "at-will" employees meaningless.  Agency's absurd argument attacks the entire rationale for the existence of the CMPA.  The CMPA was instituted precisely so that Career Service government employees are promoted or punished based solely on merit, insulated from a superior's political whim and caprice.

The *Fifth Amendment of the United States Constitution* prohibits the federal government from depriving its citizens of property without due process of law. *U.S. CONST. amend. V.* Under certain circumstances, an individual's employment with a state or local government constitutes a property interest. *Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).* An individual has a property interest in his or her employment when that person has a legitimate claim of entitlement to the job. *Roth, 408 U.S. at 577.* The legitimate claim of entitlement of employment is not created by the United States Constitution, but by independent sources such as state statutes, agency rules or policies, or agreements. *Roth, 408 U.S. at 577-78.*  At will employees are not vested with a protected property interest. *See O'Donnell v. Barry, 331 U.S. App. D.C. 272, 148 F.3d 1126, 1139 (D.C. Cir. 1998).*

It is undisputed that the Comprehensive Merit Protection Act ("CMPA") creates a property interest for employees governed by it. The CMPA establishes a Career Service for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause.

---

2 Under Chief Ramsey, the command staff consisted of: 1 Executive Assistant Chief, 5 Assistant Chiefs, 16 Commanders, and 7 Inspectors. Avis Thomas Lester, *Recent Promotions Anger Some on D.C. Force; Police Chief Departs From Tradition and Tenure to Fill Leadership Posts*, Wash. Post, Apr. 8, 1999, at J01, attached as Exhibit W.  Chief Lanier's command staff currently consists of: 7 Assistant Chiefs, 14 Commanders, and 9 Inspectors.

*D.C. Code §§ 1-608 & 1-616.51.* The Career Service includes employees who serve as sworn officers with the MPD. *D.C. Code § 1-608.01.* Under CMPA, employees can only be disciplined for cause and prior notice must be given. *Id.* Discipline specifically includes reduction in grade or demotions. *D.C. Code § 1-616.52(b).*

To reiterate, Career Service Inspectors and Commanders are promoted to their positions, while Excepted Service Inspectors and Commanders are appointed to their positions. The former may not be demoted by the Chief of Police without cause. The latter may be demoted without cause.

Here, I find that Employee was demoted without cause, and under the mistaken assumption by Agency that he was an "at-will" Excepted Service employee. Thus I conclude that Agency's action must be reversed and I thereby grant Employee's motion for summary judgment.

## ORDER

It is hereby ORDERED that:

1) Agency's action demoting Employee from his position is REVERSED, and

2) Agency reinstate Employee to his Career Service position of record, and reimburse him all pay and benefits lost as a result of the demotion; and

3) Agency file with this Office documents showing compliance with the terms of this Order within thirty (30) days of the date on which this decision becomes final.

FOR THE OFFICE:

JOSEPH E. LIM, Esq.
Senior Administrative Judge

## NOTICE OF APPEAL RIGHTS

This is an initial decision that will become a final decision of the Office of Employee Appeals unless either party to this proceeding files a **petition for review** with the Office. A **petition for review** must be filed within thirty-five (35) calendar days, including holidays and weekends, of the issuance date of the initial decision in this case.

All petitions for review must set forth objections to the initial decision and establish that:

1. New and material evidence is available that, despite due diligence, was not available when the record was closed;

2. The decision of the presiding official is based on an erroneous interpretation of statute, regulation or policy;

3. The findings of the presiding official are not based on substantial evidence; or

4. The initial decision did not address all the issues of law and fact properly raised in the appeal.

All petitions for review should be supported by references to applicable laws or regulations and make specific reference to the record. The petition for review, containing a certificate of service, must be filed with the Administrative Assistant, D.C. Office of Employee Appeals, 717- 14th Street, N.W., 3rd Floor, Washington, D.C. 20004. Four (4) copies of the petition for review must be filed.

-2-

Parties wishing to respond to a petition for review must file their response not later than thirty-five (35) calendar days, including holidays and weekends, after the filing of the petition for review.

Instead of filing a petition for review with the Office, either party may file a petition for review in the Superior Court of the District of Columbia within 30 days after service of formal notice of the final decision to be reviewed or within 30 days after the decision to be reviewed becomes a final decision under applicable statute or agency rules, whichever is later.   To file a petition for review with the Superior Court, the petitioning party should consult Superior Court Civil Procedure Rules, XV. Agency Review, Rule 1.

**CERTIFICATE OF SERVICE**

I certify that the attached **INITIAL DECISION** was sent by regular mail this day to:

Robin Hoey
2905 Charredwood Court
Forestville, MD 20747

Teresa Quon Hyden, Esq.,
Office of the General Counsel-MPD
300 Indiana Ave, NW
Room 4125, Municipal Center
Washington, DC 20001

J. Michael Hannon, Esq.
1901 18th St., NW
Washington, DC 20009

Katrina Hill
Clerk

December 14, 2007
Date

Notice: This decision may be formally revised before it is published in the District of Columbia Register. Parties should promptly notify the Administrative Assistant of any formal errors so that this Office can correct them before publishing the decision. This notice is not intended to provide an opportunity for a substantive challenge to the decision.

# THE DISTRICT OF COLUMBIA

## BEFORE

## THE OFFICE OF EMPLOYEE APPEALS

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| CHARLES L. FONVILLE | ) OEA Matter No. 1601-0057-00 |
|     Employee | ) |
| | ) |
|     v. | ) Date of Issuance: September 24, 2002 |
| | ) |
| METROPOLITAN POLICE | ) Muriel A. Aikens Arnold, Esq. |
| DEPARTMENT | ) Administrative Judge |
|     Agency | ) |
| | ) |

Leslie Deak, Esq., Employee Representative
Anna M. McClanahan, Assistant General Counsel

## INITIAL DECISION

### INTRODUCTION AND PROCEDURAL BACKGROUND

On December 21, 1999, Employee, a Captain, filed a petition for appeal regarding Agency's decision to demote him from Commander, Grade 9, to Captain, Grade 7 effective December 5, 1999 based on an off-duty incident which occurred on October 22, 1999. On February 14, 2000, this Office notified Agency concerning the appeal and directed Agency to respond no later than February 14, 2000 (sic). Agency filed its answer on March 3, 2000.

This matter was assigned to the undersigned Judge on December 6, 2001. On January 2, 2002, an Order Convening a Prehearing Conference was issued scheduling said conference on January 16, 2002. On January 9, 2002, Employee's representative contacted this Judge to


DEFENDANT'S
EXHIBIT

1601-0057-00
Page 2

request postponement of the conference.[1] On January 11, 2002, an Order to Continue the Prehearing Conference was issued rescheduling said conference on January 29, 2002 with a January 24, 2002 deadline for prehearing submissions. On January 24, 2002, Agency filed a Motion to Dismiss based on jurisdiction and a prehearing statement. On January 25, 2002, Employee's representative filed a prehearing statement.

On January 29, 2002, the prehearing conference was held, where Agency's motion was discussed and Employee's representative was given an opportunity to orally respond. This Judge decided that the jurisdictional issue should be addressed before proceeding further. Thus, Employee's representative was given an opportunity to submit a written response to Agency's motion no later than February 25, 2002. Agency was given another opportunity to address Employee's argument by submitting a brief no later than March 11, 2002.

Employee's counsel filed a brief opposing Agency's Motion to Dismiss on February 27, 2002. Agency filed a supplemental brief supporting its motion on March 11, 2002 as instructed. Since this matter could be decided on the basis of the undisputed facts and the written submissions, no additional proceedings were conducted. The record is closed.

## JURISDICTION

The jurisdiction of this Office has not been established.

## ISSUE

Whether this matter must be dismissed for lack of jurisdiction.

## BURDEN OF PROOF

OEA Rule 629.2, 46 D.C. Reg. 9317 (1999) reads as follows:

> The employee shall have the burden of proof as to issues of jurisdiction, including timeliness of filing.

## POSITIONS OF THE PARTIES

First, the parties agree that Employee was involved in an off-duty incident, on October 22, 1999, which led to his verbal demotion from Commander, Grade 9 to Captain, Grade 7 by

---

[1] Employee's representative obtained Agency's agreement, memorialized the request by letter dated January 10, 2002 and provided alternative dates agreeable to both parties.

Chief Charles Ramsey effective December 5, 1999. Second, there is no dispute that Employee was verbally advised of his demotion to Captain and that Agency did not issue any notice of reduction in grade for cause. The issue raised is one of jurisdiction: whether Employee was entitled to appeal his demotion at the Agency level and subsequently entitled to file a petition for appeal to this Office.

Agency contends that, under the District Personnel Manual (DPM) § 872.5, Employee served in the position of Commander as an "at-will employee", ie., at the pleasure of the Chief of Police and therefore, had no right to appeal his demotion and this Office has no jurisdiction to address his appeal. On May 9, 1997, the Mayor delegated personnel and rulemaking authority in the department to the Chief of Police, specifically referencing the Chief's authority under D.C. Code §4-104. Agency further argues that D.C. Code § 4-416(c)(1)(1999 Supp.) provides classes (presumably grade levels) and salary schedules for all sworn members of the department, including Class 8: Inspector; Class 9: Deputy Chief; and Class 10: Assistant Chief. Agency contends that a "Commander" is equivalent in grade to a Deputy Chief. Further, although the Commander title is not reflected in the statute, the grade level 9 associated with the Deputy Chief title has remained the same and there is no conflict between the DPM regulations and the enabling statute.[2] Agency also contends that D.C. Code § 4-104 (1999 Supp.) reflects, in part, that "the Mayor shall appoint . . . and promote all officers and members of said Metropolitan Police Department . . . provided further that the Assistant and Deputy Chiefs of Police and Inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines."[3]

Employee contends that the D.C. Court of Appeals has held that a regulation must be consistent with its authorizing statute; and that a conflict exists between the enabling statute and the DPM regulation cited by the Agency because the statute does not designate "Commander" as an at-will position; the statute only refers to Assistant Chief, Deputy Chief and Inspector positions. See D.C. Official Code 2001 Edition, § 1-608.01(d-1) and Police Personnel Amendment § 822(d-1) 47 D.C. Reg. 6333-6334 (August 11, 2000).[4] Thus, only individuals in those three (3) positions in the department can be demoted at-will without providing the member due process under the Comprehensive Merit Personnel Act (CMPA) of 1978, D.C. Code §1-601 et seq., including the right to appeal to this Office.

Employee further contends that " . . . the legislative history of Section 1-608.01(d-1) supports the presumption that the Commander position was purposely excluded from the positions from which officers could be demoted at-will."

---

[2] The time line for issuance of regulations cited is confusing, but is clarified in the Analysis section.
[3] The cites were taken from Agency's brief.
[4] The aforementioned cites were taken directly from Employee Counsel's brief filed on 2/27/02.

## ANALYSIS AND CONCLUSIONS

There is no dispute that Employee was promoted from a Grade 7 Captain to a Grade 9 Commander and then returned to the former position and grade. Demotion by definition means a loss of money as normally occurs when a reduction in grade is processed. When Employee was promoted to Commander, his grade level, and therefore, his stature, was equal to that of a Deputy Chief on the department's pay schedule. When he was demoted to Captain, his grade level matched that position on the department's pay schedule. Documents in the Agency file reflect that an organizational change was made in November, 1997 when the position of "Deputy Chief" was eliminated and members holding the rank of Captain, who were selected for promotion by the Chief of Police, were promoted to either Commander or Inspector. Members promoted to Commander are Grade 9 and are compensated in accordance with pay rates applicable to Deputy Chiefs.[5]

Even though D.C. Code § 4-104 (1994 repl.) was not, at that time, amended to change the "Deputy Chief" title to "Commander", the matching grade levels did not change and the Mayor's statutory authority to promote and demote employees at Grade 9 did **not** change.[6] According to Mayor's Order 97-88 issued on May 16, 1997, the Chief of Police was delegated the authority to amend DPM regulations (subsequently issued on January 23, 1998), inter alia, governing appointments to Inspector (Grade 8), Commander (Grade 9) and Assistant Chief of Police (Grade 10).

Employee's contention that the DPM rule, issued in 1998, predates its statutory authority is only a true statement in the sense that the "Commander" title had not been inserted in the statutory language until later. However, the authority to demote police officials at the three highest levels "for any reason or no reason at all" remained the same.[7]  D.C. Code, 1999 Supplement issued for inclusion in the 1994 replacement volume 3A (which contains Title 4,

---

[5] See attachment 3 in Agency's brief in support of its motion to dismiss filed on 3/11/02, which is a statement, dated March 2002, from Administrative Lieutenant Richard Mattiello, Human Services Office, who advises that the Deputy Chief position was eliminated in 11/97; that various Captains were promoted to Commander or Inspector; that Commanders are classified as Class 9 (Deputy Chief) and are compensated in accordance with such pay rates.

[6] Even though Agency cited a 1999 replacement citation in its brief, the actual 1994 replacement for Volume 3A is the correct citation. This statement regarding the statutory amendment also applies to the D.C. Official Code 2001 Edition, § 1-608.01 (d-1) where the three titles and the Mayor's authority to promote and demote as he so determines remained the same.

[7] *Rosa Anderson v. Office of the Chief Financial Officer*, OEA Matter No. 1601-0301 96, *Opinion and Order on Petition for Review*, (October 10, 1997), __ D.C. Reg. __ (), slip op. at 3.

1601-0057-00
Page 5

Police and Fire Departments), references § 4-104 with the following annotation: Delegation of Personnel Authority in the Metropolitan Police Department to the Chief of Police – See Mayor's Order 97-88, May 9, 1997 (44 DCR 2959). That further validates the Mayor's prior delegation of authority to the Chief of Police. There was no conflict then between the statutory authority and the DPM regulations and there is no conflict now.

Employee's argument regarding the statute's legislative history fails because: 1) no proof was presented to support the proposition that the D.C. City Council intentionally left out the "Commander" title when the CMPA was enacted; and 2) based on uncontested Agency documents, the "Commander" position was introduced in 1997, when the "Deputy Chief" position was eliminated, as explained above. No other explanation was presented.

As an "at-will" employee, Employee had no right to appeal Agency's demotion and this Office lacks jurisdiction over such an appeal. An employee has the burden of proof as to issues of jurisdiction. Here, Employee failed to meet that burden. Therefore, this Judge concludes that this matter should be dismissed for lack of jurisdiction.

### ORDER

It is hereby ORDERED that this matter is DISMISSED.

FOR THE OFFICE:

MURIEL AIKENS-ARNOLD, ESQ.
Administrative Judge

### NOTICE OF APPEAL RIGHTS

This is an initial decision that will become a final decision of the Office of Employee Appeals unless either party to this proceeding files a **petition for review** with the Office. A **petition for review** must be filed within thirty-five (35) calendar days, including holidays and weekends, of the issuance date of the initial decision in this case.

All petitions for review must set forth objections to the initial decision and establish that:

1. New and material evidence is available that, despite due diligence, was not available when the record was closed;

2. The decision of the presiding official is based on an erroneous interpretation of statute, regulation or policy;

3. The findings of the presiding official are not based on substantial evidence; or

4. The initial decision did not address all the issues of law and fact properly raised in the appeal.

All petitions for review should be supported by references to applicable laws or regulations and make specific reference to the record. The petition for review, containing a certificate of service, must be filed with the Administrative Assistant, D.C. Office of Employee Appeals, 717- 14th Street, N.W., 3rd Floor, Washington, D.C. 20004. Four (4) copies of the petition for review must be filed.

-2-

Parties wishing to respond to a petition for review must file their response not later than thirty-five (35) calendar days, including holidays and weekends, after the filing of the petition for review.

Instead of filing a petition for review with the Office, either party may file a **petition for review** in the Superior Court of the District of Columbia within 30 days after service of formal notice of the final decision to be reviewed or within 30 days after the decision to be reviewed becomes a final decision under applicable statute or agency rules, whichever is later.    To file a petition for review with the Superior Court, the petitioning party should consult Superior Court Civil Procedure Rules, XV. Agency Review, Rule 1.

LEXSEE 2007 D.C. APP. LEXIS 581

**NATHANIEL SIMS, APPELLANT, v. DISTRICT OF COLUMBIA, et al., APPELLEES.**

**No. 05-CV-801**

**DISTRICT OF COLUMBIA COURT OF APPEALS**

*2007 D.C. App. LEXIS 581*

**January 10, 2007, Argued
October 4, 2007, Decided**

**NOTICE:**

THIS OPINION IS SUBJECT TO FORMAL REVISION BEFORE PUBLICATION IN THE ATLANTIC AND MARYLAND REPORTERS. USERS ARE REQUESTED TO NOTIFY THE CLERK OF THE COURT OF ANY FORMAL ERRORS SO THAT CORRECTIONS MAY BE MADE BEFORE THE BOUND VOLUMES GO TO PRESS.

**PRIOR HISTORY:** [*1]
Appeal from the Superior Court of the District of Columbia. (00-MPA-15). (Hon. Stephanie Duncan-Peters, Trial Judge).
*Sims v. District of Columbia, 531 A.2d 648, 1987 D.C. App. LEXIS 443 (D.C., 1987)*

**DISPOSITION:**   Affirm.

**COUNSEL:** Nathaniel Sims, Pro se.

Stacy L. Anderson, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Todd S. Kim, Solicitor General, were on the brief for appellees.

**JUDGES:** Before RUIZ and KRAMER, Associate Judges, and SCHWELB, Senior Judge.

**OPINION BY:** KRAMER

**OPINION**

KRAMER, *Associate Judge:* Appellant, Nathaniel Sims, a former employee of the District of Columbia, appeals from a decision of the Superior Court denying his petition for review of an order from the Office of Employee Appeals (OEA), which in turn affirmed a hearing examiner's determination that his grievance

should be denied. He had sought relief from the OEA after he was terminated from a position as the Executive Director of the Educational Institution Licensure Commission and was reassigned at a lower salary to the position of program manager for the Water and Sewer Utilities Administration of the Department of Public Works. He contends that he was demoted in violation of the District's civil service laws. We disagree and affirm.

**I**

The relevant facts are essentially undisputed.  [*2] Sims began working for the District of Columbia government in February 1973 in an Excepted Service position as an expert in the Office of Personnel. He continued to occupy various Excepted Service appointments with the District until April 1979, when he was terminated from his position as Chief Hearing Examiner for the D.C. Rental Accommodations Office. In September 1979, Sims was reinstated to the Excepted Service as an educational and training analyst with the Office of Licenses and Permits at Grade DS-13, Step 3. Sims still occupied this position when, on January 1, 1980, provisions of the Comprehensive Merit Personnel Act of 1978 [1] (CMPA) became effective that automatically reclassified all District employees, with certain exceptions not here relevant, into the Career Service. [2] Under the relevant criteria, Sims's classification with the Office of Licenses and Permits changed from being in the Excepted Service to being in the Career Service. This change to the Career Service provided him with additional job security and procedural rights which prevented his demotion or termination except for cause, because of a reduction in force, or upon his knowing and voluntary waiver of his [*3] civil service rights. [3]

1    D.C. Code § 1-601.1 *et seq.* (1981) *currently D.C. Code § 1-601.01 et seq.* (2001). Information on the history of the CMPA's enactment can be found in *Sims v. District of Columbia, 531 A.2d*

*648, 649-50 (D.C. 1987) (Sims I)*, and *Am. Fed'n of Gov't Employees v. Barry, 459 A.2d 1045, 1047-49 (D.C. 1983)*, and need not be repeated here.

2    *See* D.C. Code §§ 1-602.1, 602.4, 608.1 (1981); 27 D.C. Reg. 4342 (1980).

3    *See generally,* D.C. Code §1-608.1 (1981); *6 DCMR § 800 et seq.* (1985). Note that while the CMPA took effect on March 3, 1979, its implementing regulations with respect to Excepted and Career Service employees were not promulgated until October 1, 1982, and April 5, 1985, respectively. *See* 29 D.C. Reg. 4285 (1982) and 32 D.C. Reg. 1857 (1985). In the meantime, the Code of Federal Regulations and the Federal Personnel Manual that had governed the District government's personnel matters remained in effect. *See* 25 D.C. Reg. 10002 (1979); 27 D.C. Reg. 803 (1980); 27 D.C. Reg. 1450 (1980). The federal provisions therefore were still technically in effect during the personnel action here at issue, which occurred in 1980. However, both parties have relied on the subsequent [*4] regulations effectuating the CMPA in both the proceedings below and before this court. The District concedes that Sims would have been entitled to the same protections under the federal rules as under those later adopted pursuant to the CMPA, and Sims does not allege that he has been disadvantaged by the government's citation to the later rules. Therefore, since the parties appear to agree that any relevant changes did not affect the substantial rights at issue and since the alternative would involve our attempting to retry on appeal a twenty-seven year-old case with authority upon which neither party nor the Court relied, we will continue to cite to the 1982 and 1985 regulations promulgated after the CMPA took effect.

At that time, the CMPA also gave the Mayor the discretion to appoint a limited number of persons -- a maximum of 100 -- to Excepted Service positions among subordinate D.C. agencies. D.C. Code §1-610.3 (1981). It specifically provided that these Excepted Service positions are meant to apply to employees "who report[] directly to the head of an agency" and "whose primary duties are of a policy determining, confidential, or policy advocacy character." D.C. Code §1-610.2 [*5] (1981). Excepted Service employees, unlike Career Service employees, are not subject to civil service requirements or protections, and thus do not have job tenure or the right to appeal termination of their employment. D.C. Code § 1-610.5 (1981). In order to insure that a Career Service employee does not lose his or her protections unknow-

ingly, an employee in the Career Service cannot be moved into the Excepted Service unless the employee first signs a waiver of his Career Service rights. [4]

4    *See* n. 11, *infra.*

Effective December 14, 1980, the Mayor appointed Sims to a position at pay grade DS-14, Step 1, ostensibly in the Excepted Service, as the Executive Director of the Educational Institution Licensure Commission (EILC), the body responsible for regulating private educational institutions in the District of Columbia. The authority cited for the appointment was *D.C. Law § 1-104, the Education Licensure Commission Act of 1976,* which allowed the Commission to "appoint such personnel as it deems necessary," and provided that "such positions shall be excepted." [5] Sims did not, however, sign a waiver relinquishing his Career Service rights and benefits. Nevertheless, the personnel action [*6] for effectuating this change clearly states that it is an "Excepted Appointment," and subsequent personnel action forms related to Sims's service in the EILC also identify his employment there as being in the Excepted Service.

5    D.C. Law 1-104, § 5 (b), 23 D.C. Reg. 8734 (1977).

Effective December 14, 1983, the chairman of the EILC promoted Sims, in his capacity as Executive Director, from pay grade DS-14 to DS-15. In May 1985, however, Sims's advancement to the DS-15 pay grade was rescinded on the grounds that the "authority to approve such action rests with the City Administrator [as the Mayor's designee], rather than the Chairman, EILC." *See Sims I, supra, 531 A.2d at 649.* Sims sued in the Superior Court to enjoin the recision of his DS-15 pay grade and to enjoin the District from seeking to recoup the additional salary he had been paid while holding that grade. The Superior Court granted summary judgment in favor of the defendants, and Sims appealed to this court. The *Sims I* court framed the issue as follows: "The controlling question in this case is whether [the statutory] authority of the EILC to appoint (and hence to promote) its personnel survived the passage of the Comprehensive [*7] Merit Personnel Act . . . enacted two years after the establishment of the EILC . . . ." *Id. at 649.* Finding that "by the terms of the CMPA standing alone, the 'personnel authority' for the EILC is the Mayor," this court affirmed the Superior Court's award of summary judgment. *Id. at 650-51.*

On January 27, 1987, while *Sims I* was pending, Sims, who was still employed by the District of Columbia as the Executive Director of the EILC at pay grade DS-14, received written notice that he was being terminated from that position, effective February 14, 1987, and reappointed, effective February 15, 1987, to a lower-

paying DS-13 Career Service position within the Water and Sewer Utilities Administration of the Department of Public Works (DPW). The grade (DS-13) and step (7) he was given at the DPW were the same level he would have attained if his appointment to the position of Executive Director of the EILC had never happened, and he had simply stayed in his same Career Service position throughout the relevant time period. Sims filed a grievance based upon these changes, which was denied. He then petitioned the OEA for review, and the proceedings that are the subject of this appeal followed.

## II

Sims's [*8] basic contention is that the District of Columbia took an adverse employment action against him without providing him the benefit of protections to which he claims to have been entitled, and further, that it did so under the pretext that the position he occupied at the time was in the Excepted Service and therefore not subject to such protections. Under Sims's theory, his promotion to grade DS-14 as Executive Director of the EILC was valid, but the District's attempt to classify that position as being within the Excepted Service was not. He therefore claims that he held the position and its DS-14 grade not as an Excepted Service employee, but rather as a Career Service employee. As a result, he claims, he is entitled to back pay to make up the difference between the DS-14 grade -- of which, he claims, he was improperly deprived for the period from 1987 to 1997 -- and the DS-13 grade, for which he received pay. In addition, he seeks to have his pension payments, both retroactively and prospectively, recalculated to reflect that he retired in 1997 at grade DS-14.

Sims advances two broad arguments in support of these claims. The first is that the Mayor lacked the authority to appoint him [*9] to the Excepted Service because he had already exhausted his statutory allotment of discretionary appointments. The second is that procedural flaws rendered respondents's attempt to move him from the Career Service to the Excepted Service ineffective.

## III

### A. Mayoral Authority Claim

Sims contends that "the Mayor had reached the statutorily authorized limit of 100 Excepted Service positions prior to the attempt of 'excepting' Sims's position, and therefore the attempt to place Sims in the Excepted Service was without authority and thus void." He concedes, however, that he did not make this claim during the agency proceedings. The District asserts that because this claim was not raised before the OEA, it was waived. We agree.

It is a principle of long standing that "[a]dministrative and judicial efficiency require all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review." *Orius Telecomm. v. District of Columbia Dep't of Employment Servs.*, 857 A.2d 1061, 1068 (D.C. 2004) (quoting *Hughes v. District of Columbia Dep't of Employment Servs.*, 717 A.2d 909, 912 (D.C. 1998)). [6] Therefore, only under "exceptional circumstances," [*10] *Jewell v. District of Columbia Police and Firefighters Ret. and Relief Bd.*, 738 A.2d 1228, 1231 (D.C. 1999), where "manifest injustice" would otherwise result, *Goodman v. District Columbia Rental Hous. Comm'n*, 573 A.2d 1293, 1301 (D.C. 1990), will the court consider claims that were not presented to the agency. This test has not been met here.

> 6  *See also Hill v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C. 1985); *Fare Care Found. v. Dist. of Columbia Dep't of Ins. and Sec. Regulation*, 716 A.2d 987, 993 (D.C. 1998); *Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 712 A.2d 1018, 1019-1020 (D.C. 1998).

### B. Claims of Procedural Errors by the Hearing Examiner.

Sims asserts that the hearing examiner erred in failing to grant him a hearing or to compel timely discovery to help him develop his claims. Both of his allegations of error, however, are based on the premise that the errors affected Sims's ability to build an evidentiary record. But the basis of his claims are matters of public record: (1) the CMPA's requirements that the Mayor publish lists of Excepted Service positions and their appointees, as well as changes thereto, in the D.C. [*11] Register within specified time limits; [7] and (2) the lists actually published from 1979 to 1983. When asked at oral argument what prevented him from compiling this information, the answer was that "a lot was happening at the time," that he changed lawyers twice during the instant proceedings, that it was difficult for him to locate copies of the D.C. Register and that the record was being developed over a long period of time. These reasons, even if viewed in their totality, simply do not amount to "exceptional circumstances." [8]

> 7  D.C. Code § 1-610.3 (c) (1981).

> 8  This conclusion also resolves Sims further assertion that the hearing examiner erred by not requiring the respondents to demonstrate that the OEA's delay in rendering its decision did not substantially prejudice him.

We note, however, that even if we were to decide this issue in Sims's favor, which we do not, our ultimate disposition would be the same, because we agree with the OEA's conclusion that Sims's appointment to the Excepted Service was invalid on other grounds. Thus, we turn to what we consider to be the dispositive question, that is, whether Sims obtained a vested right in the salary that accompanied his appointment.

## C.  [*12] Invalidity of Sims's Appointment to the Excepted Service

Sims's main argument is that even if the Mayor had the authority to appoint him to the Excepted Service and invoked the proper law in doing so,

the failure to honor the procedural requirements of the law as relating to the appointment -- a conference regarding the diminution of rights and benefits, a written waiver of acceptance, and a publication of appointment within 45 days as required in converting from a career DS-13 to an Excepted Service DS-14 -- renders the appointment invalid.

Before reviewing these contentions, we reiterate our function in the OEA review process, which we have previously described as follows:

Although this case comes to us via the Superior Court, the scope of our review is the same as if it had come to us directly from the agency. Thus, in the final analysis, *confining ourselves strictly to the administrative record, we review the OEA's decision, not the Superior Court's,* and we must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law.

*Settlemire v. District of Columbia Office of Employee Apps., 898 A.2d 902, 905 n.4 (D.C. 2006)* [*13] (emphasis added). [9]

9  We note that this is why we do not look to the careful opinion of the Superior Court, which made findings that Sims had constructively waived his right to the protections because he was an expert in the personnel field, having previously worked in the Office of Personnel, and because all of the paperwork involved with the

appointment specified that he was now in the Excepted Service. We are concerned that an interpretation that permitted constructive waiver could undermine the protections of this statutory scheme.

While Sims provides numerous grounds for his argument that his appointment to the Excepted Service was invalid, [10] we need not examine these because the OEA agreed that it was invalid. Specifically, it ruled: "Apparently, [the District] neglected to have Employee waive Career Service rights as required by the applicable personnel regulations and, as a result, Agency's action appointing Employee to the Excepted Service was rendered ineffective."

10  We also find unpersuasive the District's contention that Sims's claims were precluded by *res judicata* and collateral estoppel because of this Court's decision in *Sims I.* The essential fact in this case -- Sims's [*14] termination from his position as the Executive Director of the EILC -- had not occurred when the litigation began in *Sims I* and indeed, by the time of his termination, the *Sims I* litigation had proceeded to the stage where it was pending a final decision by this court.

The District, moreover, does not argue that the agency's conclusion lacked substantial evidence in the record. Indeed, it effectively concedes that Sims did not provide a written waiver and represents: "It was undisputed below . . . that appellant did not waive his Career Service rights in writing when he accepted this Excepted Service position." The District also does not argue that the agency's decision in this respect was contrary to the law. Rather, the District's position is that this court "need not resolve this conflict because appellant received everything to which he could have been entitled under the CMPA when he was terminated from the Excepted Service position and returned to the Career Service at DS-13 and step 7."

Although the agency did not cite authority for its decision that the lack of a waiver of Career Service rights rendered Sims's appointment invalid, this conclusion is supported by the regulations  [*15] of the D.C. Office of Personnel governing changes to positions with lesser rights: "Any internal placement of a Career Service appointee to a position with less rights and benefits *shall not be effective* unless the employee has waived the rights and benefits in writing; and the waiver shall be made a permanent part of the employee's Official Personnel Folder." *6 DCMR § 833.2* (1985) (emphasis supplied). Here, the OAH found that "following [Sims's] conversion to the Career Service, the District "offered [him] a position in the Excepted Service as the Executive

Director at grade DS-14." As an Excepted Service employee, Sims obviously had "less rights and benefits" with respect to job retention than he did in the Career Service. Moreover, the OEA found that "[the District] neglected to have Employee waive his Career Service rights . . . ." *Id.* These are the very rights that Sims would have surrendered by accepting placement in the Excepted Service. Based upon these findings, the OEA then concluded that "as a result, Agency's action appointing Employee to the Excepted Service was rendered ineffective." *Id.* Given the plain wording of *6 DCMR § 833.2* (1985) and mindful of the deference we [*16] normally accord an agency's interpretation of its own regulations, *see, e.g., Dorchester House Assoc. Ltd. D'ship v. District of Columbia Rental Hous. Comm'n, 913 A.2d 1260, 1263 (D.C. 2006)*, we cannot find the OEA's interpretation of the regulation to be unreasonable, nor its conclusion to be either "clearly erroneous as a matter of law" or one that did not "flow rationally from its findings." *Raphael v. Okyiri, 740 A.2d 935, 945 (D.C. 1999)*.

Yet while Sims agrees that the reclassification from the Career Service to the Excepted Service was a nullity, he nonetheless insists that he obtained a vested right in the DS-14 pay grade that accompanied his appointment, and that the District therefore could not deprive him of that right except through strict compliance with civil service procedures. As authority for this proposition, Sims cites *Coffin v. District of Columbia, 320 A.2d 301 (D.C. 1974)*, which he reads to stand for the proposition that "[i]f the contract is divisible, such that part is valid, but another part is *ultra vires,* the invalidity does not ordinarily affect the parts of the contract which are not dependent upon the invalid part." Therefore, according to Sims, "the valid [*17] part may be enforced while that which is invalid may be rejected."

In disposing of this point, the OEA began by stating that the District's "failure to obtain a waiver does not entitle an employee to remain at DS-14." It explained that because [Sims] "no longer serves as the Executive Director" and "his appeal to this Office does not seek reinstatement to that position," he "cannot continue to claim any of the emoluments associated with that position." Thus, the OEA concluded, the District "has no obligation to pay Employee anything other than the wage associated with his present position as Utility Program Manager." The OEA therefore rejected Sims's Solomonic attempt to split his appointment as the EILC's Executive Director into two constituent parts and found that because the appointment to the EILC was invalid, the promotion to a Grade 14 was also necessarily invalid. The OEA concluded that the appointment as the Executive Director, at a DS-14 level, was not cancelled, but rather, as a matter of law, it was never legally effectuated in the first place.

The OEA's position, in essence, is that the waiver required by *6 DCMR § 833.2* (1985) is a *prerequisite* to the executive's exercise [*18] of the legal authority to make Excepted Service appointments for positions deemed by the Mayor to be key without limiting his or her flexibility to remove such person from that position at will. The waiver also ensures that District employees who are selected to move from the Career Service to the Excepted Service are adequately informed of the protections that they lose as a result of that move. Thus, according to the OEA's reasoning, since Sims's appointment to the Executive Director position was invalid because he never signed the necessary waiver, he cannot now use the DS-14 grade he achieved solely by virtue of the invalid appointment to an Excepted Service position as the basis to seek damages. Simply put, without a signed waiver, the Mayor or his designee did not have the legal authority under *6 DCMR § 833.2* (1985) to effect the appointment to the Excepted Service.

Stated differently, the OEA's reasoning is that although the District violated *6 DC MR § 833.2* (1985) by offering Sims an appointment to the Excepted Service without satisfying the necessary prerequisites, Sims cannot obtain damages resulting from this violation because he was not in any way injured by it. On the contrary, [*19] Sims was able to take advantage of an opportunity which the District had no legal obligation to extend to him, that is, the chance to be paid at the DS-14 level for a period of six years. When that opportunity was over, Sims was no worse off for having had it. Rather, he had benefitted by being paid at the DS-14 level while in the position, and simultaneously retaining his Career Service rights at the DS-13 level. Indeed, when transferred to the DPW, he received all of the step increases commensurate with his total time in service, including the time he served as the Executive Director of the EILC.

Although we express no opinion, this case might be different if Sims had actually suffered harm from the violation of *6 DCMR § 833.2* (1985), for example, by being unwittingly lulled into the Excepted Service by the promise of a higher pay grade and then terminated outright or by being returned to the Career Service at a lower grade and/or step than he otherwise would have achieved in the same amount of time. He might well then have standing to raise the violation [11] because under the OEA's reasoning, the waiver requirement of *6 DCMR § 833.2* (1985) is a shield that can be wielded by either [*20] the employer or the employee, depending on the circumstances. On the one hand, it protects the employer by rendering ineffective an appointment to the Excepted Service of an employee who retains Career Service rights, thereby preserving the Mayor's right to exercise maximum discretion over the limited number of Excepted Service positions; on the other hand, it protects

the employee by allowing him or her to make an in-formed choice about whether or not to leave the security of the Career Service to pursue an opportunity in the Excepted Service. Simply stated, without the requisite waiver, the appointment of a Career Service employee to the Excepted Service has no legal effect.

11   To the extent *6 DCMR § 833.2* (1985) protects employers, employees have a parallel provision in *6 DCMR § 834.1* (1985), which provides: "Except as waived in accordance with § 833.2, an employee's rights and benefits with respect to continued employment shall not be reduced by promotion, demotion, or reassignment." This adds further support to the OEA's conclusion that in the absence of a waiver, an appointment to the Excepted Service is a total nullity because an employee cannot hold an Excepted Service position [*21] and still maintain Career Service rights with respect to that position. *See* D.C. Code § 1-610.1 (1981) ("Persons appointed to the Excepted Service are not in the Career . . . Service.").

This interpretation of the regulation, moreover, is consistent with its wording and the general purposes of the system, which are to ensure that applicants for positions in government service are hired and promoted based on merit -- not patronage -- and to protect incumbents from arbitrary, capricious, or politically-motivated employment actions. *See Sampson v. Murray, 415 U.S. 61, 71, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)* ("a primary purpose of that system was to remove large sectors of Government employment from the political 'spoils system' which had previously played a large part in the selection and discharge of Government employees"); *Crete v. City of Lowell, 418 F.3d 54, 59 (1st Cir. 2005)* (listing "[b]asic merit principles [that] should guide all decisions in the civil service system").

Based on the foregoing analysis, we conclude that the OEA's decision denying Sims's claim for damages is supported by substantial evidence in the record and is otherwise in accordance with law. Accordingly, we

*Affirm.*