**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| ROBIN HOEY, | : | |
| Plaintiff, | : | Case Number: 1:07-cv-00919 |
| | | Judge John D. Bates |
| v. | : | |
| DISTRICT OF COLUMBIA, et. al., | : | |
| Defendants. | : | |

**PLAINTIFF'S SURREPLY TO DEFENDANTS' REPLY**
**TO PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENT**
**TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Robin Hoey, by and through his attorneys HANNON LAW GROUP, LLP, pursuant to Fed. R. Civ. Pro. 6(b)(1) and LCvR 7, respectfully presents this Sur-reply to Defendants' Reply to Plaintiff's Response to Defendants' Supplement to Their Motion to Dismiss the Amended Complaint.

In this matter, the Defendants filed a Supplement to their Motion to Dismiss the Amended Complaint on December 19, 2007. Plaintiff responded on January 9, 2008. Defendants filed their Reply on January 28, 2008 with Plaintiff's consent and leave of this Court. Plaintiff now files this Sur-reply originally due on February 18, 2008, however as that date fell on President's Day, this Sur-reply is being filed the following day, February 19, 2008.

**BACKGROUND**

This case began in April, 2007 when Plaintiff Robin Hoey was demoted without cause or notice from his rank of Commander within the Metropolitan Police Department to the rank of Captain. As a result of that action by Chief of Police Cathy Lanier, the Plaintiff brought this action and filed a Petition for Review with the Office of Employee Appeals. The Administrative Judge of the OEA granted Summary Disposition to the Plaintiff in that case on December 14,

2007. The Metropolitan Police Department has since filed an Appeal of that ruling with the Office of Employee Appeals.

### I. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III (DECLARATION OF RIGHTS) AND COUNT IV (INJUNCTIVE RELIEF)

On May 16, 2007, Plaintiff filed his Complaint with this Court which included Count One (Violation of 42 U.S.C. § 1983), Count Two (Intentional and Negligent Infliction of Emotional Distress), Count Three (Declaration of Rights), Count IV (Injunctive Relief) and Count Five (Punitive Damages). On July 12, 2007, Plaintiff filed a Motion for Partial Summary Judgment on Count III (Declaration of Rights) and Count IV (Injunctive Relief).

The actions of the Metropolitan Police Department in the period of time following Plaintiff Hoey's reduction in rank caused the Plaintiff to amend his Complaint adding Count Six alleging "Defamation Plus". The Amended Complaint included no other substantive changes or additions beyond the facts and law supporting Count Six. The Amended Complaint did not in any way alter the arguments and facts underlying Count III and Count IV at issue in the Motion for Partial Summary Judgment. The Defendants have argued that Plaintiff's filing of an Amended Complaint has made his Motion for Partial Summary Judgment moot. To address this formal objection, Plaintiff will file a motion requesting leave of the Court to have his Motion for Partial Summary Judgment apply to the First Amended Complaint. Plaintiff will, of course, seek consent before filing the motion.

### II. PLAINTIFF IS A MEMBER OF THE CAREER SERVICE AND THEREFORE HAS A PROPERTY INTEREST IN HIS EMPLOYMENT.

Defendants have struck upon a new argument in an effort to afford the Chief of Police unfettered discretion to demote all Inspectors and Commanders of the force wherever they may serve. The record discloses that Commanders and Inspectors populate the leadership in every

District of the Police Department, as well as in some of its subsidiary units.  No longer do these ranks denote only members of the Chief of Police's Command Staff.  Therefore, there are far more Commanders and Inspectors in the field than within the Chief's inner circle of hand-picked advisors.  Were Defendants' new argument to prevail, the Career Service status of by far the majority of Commanders and Inspectors would be erased.  The Defendants would have re-written the D.C. Code in a way that would allow the Chief of Police to far exceed the number of Excepted Service officers under her command.

While MPD may indeed be unique among D.C. agencies in terms of affording the Chief of Police power over her Command Staff, that power is not unlimited.  The statutory scheme at issue provides that "the Chief of Police may designate up to 1% of the total number of authorized positions within Metropolitan Police Department as Excepted Service policy positions, no more than 10 of which may be filled by sworn members or officers."  D.C. Code § 1-609.03.  Defendants do not dispute that there are far more than 10 officers holding the rank of Commander or Inspector.  Therefore, the unique power of the Chief of Police permits her only 10 appointments to Excepted Service from among the rank and file officers.  This explains why Robin Hoey and numerous other Commanders and Inspectors have been <u>promoted</u> to those positions.  This also explains why these promotions are designated Career Service positions.  Consistent with that scheme, these officers' annual evaluations clearly reflect that they are Career Service employees.  It is telling that not a single one of the Defendant's pleadings in this case addresses these clear limitations on Excepted Service in MPD created by § 1-609.03.

Additionally, examining the history of Excepted Service within MPD, it is clear that the degree of discretion has been reduced over time rather than enlarged.  In 1978 there was no stated limitation of the number of Expected Service personnel within MPD (<u>see</u> 25 DCR 5808),

and then in 1999, § 1-610.03 (the previous codification of current § 1-609.03) was amended to contract the broad authority in the Excepted Service track to "no more than 10 excepted service sworn employees from MPD." See 46 DCR 5315. Finally, in 1999 the current version was created with the 1% limitation that remains in place. See § 1-609.03.

MPD argues for this discretion based on the word "notwithstanding". The argument negates major portions of the D.C. Code which can easily be read harmoniously with the word "notwithstanding." Principally, Defendants' reading would negate the statutory distinction between Career Service and Excepted Service Commanders and Inspectors. There are clearly two paths to Commander: via an Excepted Service appointment or a Career Service promotion. If "notwithstanding" swallows the differences, as argued by the Defendants, then there would have been no point to the distinction that exists in 1-608(d-1).

The courts presume that a legislative body acts with knowledge of how the judiciary interprets statutes. "It is presumable that Congress legislates with knowledge of our basic rules of statutory construction." McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 496 (1991). As such, the legislature is presumed to know the "cardinal rule" of statutory construction: that a statute is to be read as a whole, since the meaning of statutory language depends on the context. See, e.g. King v. St. Vincent Hosp., 502 U.S. 215, 221 (1991)("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used"(quoting L. Hand, J.)). Plaintiff's interpretation would allow the statute to be read in the aggregate, as a harmonious whole, not to mention in harmony with personnel practices currently in place; whereas, Defendants' interpretation would completely render later drafted segments, such as § 1-609.03, meaningless by virtue of the single word "notwithstanding."

Where "uncertainty arises from a word used by the legislature, a statutory section under construction should be read in context with the entire act and meaning ascribed to it that avoids strained or absurd consequences."  Standing v. Dep't of Labor & Indus., 92 Wn.2d 463, 474 (Wash. 1979).  The District of Columbia's interpretation of the statute would yield an absurd result, bypassing guaranteed constitutional rights by virtue of a single word in a sub-section of the Merit Personnel System.  Given the constitutional underpinnings of the Merit Personnel System, this reading is highly unlikely and inconsistent with MPD practice.

Further, Defendants' new interpretation is inconsistent with the recent holding of Sims v. District of Columbia, 933 A.2d 305 (D.C. 2007).  That case confirms that in the absence of any evidence showing that Robin Hoey was appointed to an Excepted Service position, he is deemed to continue in Career Service.  "In order to assure that a Career Service employee does not lose his or her protections unknowingly, an employee in the Career Service cannot be moved into the Excepted Service unless the employee first signs a waiver of his Career Service rights."  Id at 308.  The waiver is an acknowledgment of the surrender of Career Service rights.  Those who are *promoted* and not *appointed* do not sign a waiver because they are retaining their rights under the Merit Personnel System.

Plaintiff Hoey was never asked to sign a waiver of his Career Service rights, which is consistent with the record of his promotion through the ranks to Commander.  The agency's actual conduct with regard to Plaintiff Hoey consistently reflects its treatment of him as a Career Service employee, promoted to Inspector and then to Commander.  MPD's past conduct is strong evidence that the statutory scheme cannot be read in this fashion.  See Public Citizen, Inc. v. United States Nuclear Regulatory Committee, 940 F.2d 679, 682-83 (D.C. Cir. 1991); see also Community Nutrition Inst. v. Young, 818 F.2d 943, 949 (D.C. Cir. 1987).

### III.    RES JUDICATA AND THE OEA DECISION'S REASONABLENESS

Defendants accurately state that discovery had not closed in the OEA matter when Judge Lim granted summary disposition to Robin Hoey. However, it is entirely inaccurate to suggest that "the parties did not participate in discovery in advance of the OEA's ruling." Def. Reply P. 9. Nor is it accurate to argue that the parties in the OEA proceeding were not afforded all the procedural rights to which they were entitled. Rather, the parties had exchanged a substantial amount of documentation including the agency's responses to request for production of documents, admissions and interrogatories. Defendants make a point to mention that "no depositions were taken in this matter," knowing full well that the agency objected to noticed depositions and filed a last minute protective order which was denied. The only reason that scheduled depositions of Chief Lanier and Deputy Chief Durham were not held was the intervening ruling of Judge Lim.

Moreover, as in this case, MPD has agreed that the material facts are not in dispute. MPD acknowledges that the documentation in Robin Hoey's personnel record consistently evidences his position as a Career Service officer. Contrary to the Defendants' argument, the OEA decision was reasonably based on a fully developed record. The agency had ample opportunity to provide any documentation it wished to assist the administrative judge in reaching his decision, and the agency took advantage of that opportunity. Notably, at one status conference Judge Lim inquired of the agency whether it had any documentation showing that Plaintiff/Petitioner was Excepted Service. Counsel for the agency responded no.

Defendants' reference to the Fonville case is inapplicable on this point. In that case, the OEA judge declined jurisdiction; therefore, there was no full and fair litigation of the issues later presented to Judge Sullivan. In stark contrast, OEA accepted jurisdiction of Petitioner's claim,

6

oversaw discovery and issued a ruling based on pleadings supported with extensive documentation by the parties. Judge Sullivan permitted the parties in <u>Fonville</u> to pursue their arguments precisely because the OEA had precluded any development of the case.

     WHEREFORE, Plaintiff Robin Hoey respectfully requests that the Court deny Defendant's Motion to Dismiss And/Or In the Alternative for Summary Judgment and Grant Plaintiff's Motion for Summary Judgment as to Count III (Declaration of Rights) and Count IV (Injunctive Relief).

          Respectfully submitted,

          HANNON LAW GROUP, LLP

          */s/ J. Michael Hannon*
          J. Michael Hannon, #352526
          1901 18th Street, N.W.
          Washington, DC 20009
          (202) 232-1907
          (202) 232-3704 (facsimile)
          jhannon@hannonlawgroup.com

          *Attorneys for Plaintiff Robin Hoey*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing **Plaintiff's Surreply to Defendants' Reply to Plaintiff's Response to Defendants' Supplement to Defendants' Motion to Dismiss the Amended Complaint** was sent via electronic filing, this 19th day of February, 2008 to:

Leah Brownlee Taylor
Office of the Attorney General
441 Fourth Street, NW
6th Floor-South
Washington, DC 20001-2714

                                                                 */s/ J. Michael Hannon*
                                                                  J. Michael Hannon