UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| ROBIN HOEY, | : | |
| Plaintiff, | : | Case Number: 1:07-cv-00919 |
| | | Judge John D. Bates |
| v. | : | |
| DISTRICT OF COLUMBIA, et. al., | : | |
| Defendants. | : | |

### NOTICE OF FILING

The Clerk of the Court shall please accept for filing the attached Exhibit A in support of the **PLAINTIFF'S SUR-REPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO THE MOTION TO DISMISS THE AMENDED COMPLAINT**, electronically filed on February 19, 2008:

Dated March 16, 2008                             Respectfully submitted,

                                                 HANNON LAW GROUP, LLP


                                                 _____/s/ J. Michael Hannon_____
                                                 J. Michael Hannon, #352526
                                                 1901 18th Street, N.W.
                                                 Washington, D.C. 20009
                                                 (202) 745-6880
                                                 (202) 232-3704 Facsimile
                                                 jhannon@hannonlawgroup.com

**CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that the foregoing **NOTICE OF FILING** was sent via electronic filing this 16th day of March, 2008, to:

Leah Brownlee Taylor
Office of the Attorney General
441 Fourth Street, NW
6th Floor-South
Washington, DC 20001-2714

                                                */s/ J. Michael Hannon*
                                                 J. Michael Hannon

# EXHIBIT A

OFFICE OF EMPLOYEE APPEALS
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBIN HOEY | : | |
| Petitioner, | : | Case Number: 1601-0074-07 |
| v. | : | |
| | : | Joseph E. Lim, Esq. |
| METROPOLITAN POLICE DEPARTMENT | | Senior Administrative Judge |
| Respondent. | : | |

**PETITIONER'S RESPONSE
TO RESPONDENT METROPOLITAN
POLICE DEPARTMENT'S PETITION FOR REVIEW**

Comes now Petitioner ROBIN HOEY through his designated representative, HANNON LAW GROUP, LLP and for his Response to Respondent's Petition for Review states as follows: The Board of the Office of Employee Appeals should deny the Respondent's Petition for Review and affirm the Initial Decision of the Administrative Judge as the decision:

1. Appropriately interpreted the entirety of D.C. Official Code § 1-608.01;

2. Harmoniously interpreted the language of the Comprehensive Merit Personnel Act (CMPA) and § 1-608.01(d-1) in a way that allowed both provisions to retain their meaning as part of the statutory whole.

3. Honors the express language and intent of the Council of the District of Columbia in enacting the CMPA, creating an Excepted Service and enacting § 1-608.01(d-1).

Further, Respondent's Petition for Review fails to adequately establish that OEA Rule 634.3 is satisfied and that the Board should grant the Petition for Review. Respondent admits that the Petition does not meet the criteria for review set forth under (a), (c), or (d). Moreover, the

Petition does not meet the criteria under (b), as the decision of the Administrative Judge is not based on an erroneous interpretation of statute, regulation or policy. The decision is supported by ample factual evidence and legal precedent and should not be reversed by this Board.

## BACKGROUND

Petitioner Robin Hoey is a Career Service, uniformed employee of the Metropolitan Police Department. In 2004, he was promoted from the rank of Inspector to Commander, and given command of the Sixth District. (See Exhibits A through H attached, pertinent documents from Petitioners personnel file noting his Career Service promotions and status.) This matter arises from his demotion on April 19, 2007. On that date, Chief of Police Cathy Lanier demoted Robin Hoey, without explanation, from Commander to Captain and transferred him from the Sixth District to the D.C. Central Cellblock. The demotion was given immediate effect without cause, notice, or an opportunity to be heard. Chief Lanier wrongfully told Robin Hoey that he is an "at will" employee as an explanation for his demotion.

Having been promoted through the ranks, Robin Hoey is a Career Service Employee of the Metropolitan Police Department. Under the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), Career Service employees are vested with a property interest in public employment; consequently, they cannot be disciplined absent a showing of cause. Further, the CMPA requires that all members of the Career Service be given written notice and an opportunity to be heard prior to any disciplinary action including reductions in grade, reductions in pay, and demotions.

The actions of Chief of Police Cathy Lanier and the Metropolitan Police Department are a clear violation of the CMPA and the District of Columbia Code provisions which govern this matter. Consequently, Robin Hoey contends that the Board of the Office of Employee Appeals

should affirm the decision of Senior Administrative Judge Lim wherein he found that Petitioner should be reinstated to his Career Service position and reimbursed all pay and benefits lost as a result of the demotion.

## ARGUMENT

### A. Career Service Employees, Including Commanders, Cannot Be Demoted Without Cause and Without Regard to Any Other Law Or Regulation By the Chief of Police.

Respondent's first argument in their Petition for Review quite simply attempts to erase the distinction between Career Service and Excepted Service employees which is established in the D.C. Code.  The Respondent asks this Board to accept that no matter the crucial distinctions drawn between these classes of employees by the D.C. Code, "the Chief of Police's power to demote overrides all other conflicting provisions, including the notice and hearing requirements normally afforded to Career Service employees under the CMPA and the District Personnel Manual."  Respondent Petition for Review P. 6.  Judge Lim's Initial Decision rightfully pointed out the absurdity of this position: the "CMPA was instituted precisely so that Career Service government employees are promoted or punished based solely on merit, insulated from a superior's political whim and caprice."  Initial Decision P. 9.

In its Petition, MPD presents a new argument not presented to Judge Lim and not relied upon by MPD in its entire history.  MPD relies upon the "notwithstanding" clause in § 1-608.01(d-1) to proclaim that all Inspectors and Commanders serve at the pleasure of the Chief of Police  This argument, not raised in the pleadings before Judge Lim, is clearly a fall back position by the Agency given their inability to prove that Petitioner is a member of the Excepted Service.  In the face of abundant evidence that Petitioner has always been treated and classified as a member of the Career Service, as found by Judge Lim, Respondent now argues that

3

regardless of Petitioner's Career Service status, he can be demoted without cause. Respondent's new argument is an effort to afford the Chief of Police unfettered discretion to demote all Inspectors and Commanders of the force wherever they may serve.

The record discloses that Commanders and Inspectors populate the leadership in every District of the Police Department, as well as in some of its subsidiary units. No longer do these ranks denote only members of the Chief of Police's Command Staff. Therefore, there are far more Commanders and Inspectors in the field than within the Chief's inner circle of hand-picked advisors. Were Petitioner' new argument to prevail, the Career Service status of by far the majority of Commanders and Inspectors would be erased. The Petitioner would have re-written the D.C. Code in a way that would allow the Chief of Police to far exceed the number of Excepted Service officers under her command.

Respondent's Petition cites a lengthy series of cases in support of their argument that the "notwithstanding" clause allows the Chief's discretion to override any other section of the D.C. Code that may conflict with her desire to demote an Inspector or Commander. Respondent argues that the use of "notwithstanding" allows the Chief to act "unhampered by the requirements of CMPA and the DPM…irrespective of whether [Petitioner] was a Career Service employee or not." Petition for Review P. 7. Not only does this argument strain credulity and lead to an absurd result as pointed out by Judge Lim, but it also rejects the proper and considerably more harmonious interpretation of the statute argued by Petitioner. Namely, that the Chief of Police does have oversight of all members of her command, but must give notice and cause when seeking to demote a Career Service member of the command staff.

The distinction between Excepted and Career Service Inspectors and Commanders is necessary because the Chief of Police is limited to 10 Excepted Service officials from among the

uniformed service.  The remainder of Inspectors and Commanders must be promoted to their positions because of this limitation.  There is no need to strip Career Service Inspectors and Commanders of the rights under the CMPA to enable the Chief to manage her command.  It is the Chief of Police who initially has the choice of offering these positions as Excepted Service appointments or Career Service promotions.  If the Chief wants to subject an Inspector or Commander to demotion at her discretion, then that officer may accept an appointment to Excepted Service at his or her discretion.  If that officer accepts such an appointment, he or she has the right to fall back to the Career Service as a Captain upon demotion.  If the Chief's command staff already includes 10 officers, the Chief may only promote an officer to Inspector or Commander in Career Service.  In either case, it is the Chief's decision initially with the limitation imposed by law of 10 officers in Excepted Service.

The courts presume that a legislative body acts with knowledge of how the judiciary interprets statutes.  "It is presumable that Congress legislates with knowledge of our basic rules of statutory construction."  McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 496 (1991).  As such, the legislature is presumed to know the "cardinal rule" of statutory construction: that a statute is to be read as a whole, since the meaning of statutory language depends on the context.  See, e.g. King v. St. Vincent Hosp., 502 U.S. 215, 221 (1991)("Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used"(quoting L. Hand, J.)).  Petitioner's interpretation would allow the statute to be read in the aggregate, as a harmonious whole, not to mention in harmony with personnel practices currently in place; whereas, Petitioner' interpretation would completely render later

drafted segments, such as § 1-609.03, meaningless by virtue of the single word "notwithstanding."

Where "uncertainty arises from a word used by the legislature, a statutory section under construction should be read in context with the entire act and meaning ascribed to it that avoids strained or absurd consequences." Standing v. Dep't of Labor & Indus., 92 Wn.2d 463, 474 (Wash. 1979). The Agency's interpretation of the statute would yield an absurd result, bypassing guaranteed constitutional rights by virtue of a single word in a sub-section of the Merit Personnel System. The conclusion reached by Judge Lim in support of Petitioner's argument, in contrast, allows the Chief discretion within her command staff but limits that discretion in the ways outlined by the code itself. It is illogical that what the code provides for in the CMPA would be bluntly taken back by a word in another subsection. Given the constitutional underpinnings of the Merit Personnel System, this reading is highly unlikely and inconsistent with MPD practice.

The agency's actual conduct with regard to Petitioner consistently reflects its treatment of him as a Career Service employee, promoted to Inspector and then to Commander. There is no suggestion within his personnel file that he was ever appointed to a position designated as Excepted Service. See Exhibits A-H. There is also no indication, nor one argued by Respondent's, that Petitioner was informed of or waived any of his Career Service rights when he accepted the promotion to Inspector and then to Commander. MPD's past conduct is strong evidence that the statutory scheme cannot be read in the fashion they now suggest to this Board. See Public Citizen, Inc. v. United States Nuclear Regulatory Committee, 940 F.2d 679, 682-83 (D.C. Cir. 1991); see also Community Nutrition Inst. v. Young, 818 F.2d 943, 949 (D.C. Cir. 1987).

Further, Respondent's new interpretation is inconsistent with the recent holding of <u>Sims v. District of Columbia</u>, 933 A.2d 305 (D.C. 2007). That case confirms that in the absence of any evidence showing that Robin Hoey was appointed to an Excepted Service position, he is deemed to continue in Career Service. "In order to assure that a Career Service employee does not lose his or her protections unknowingly, an employee in the Career Service cannot be moved into the Excepted Service unless the employee first signs a waiver of his Career Service rights." <u>Id</u> at 308. The waiver is an acknowledgment of the surrender of Career Service rights. Those who are *promoted* and not *appointed* do not sign a waiver because they are retaining their rights under the Merit Personnel System. Plaintiff Hoey was never asked to sign a waiver of his Career Service rights, which is consistent with the record of his promotion through the ranks to Commander. It is also consistent with Petitioner's argument and Judge Lim's Initial Decision that he did not in fact waive any rights of the Career Service when he entered the command staff.

### B. D.C. Code § 1-608.01 Should Be Interpreted Harmoniously With the More General Provisions of the CMPA.

In a related argument to their "notwithstanding" argument, the Respondent suggests that the specific language of § 1-608.01(d-1) "would take precedent over the more general provisions of the CMPA." Petition for Review P. 7. Once again, Respondent pits sections of the D.C. Code against each other in an effort to grant the Chief of Police unfettered discretion in a way never envisioned by the D.C. Council. Since this level of overriding discretion is not stated in the plain language of the D.C. Code, the only manner in which Respondent can argue for its existence is to negate contradictory sections. In this case, Respondent's position would result in a wholesale elimination of the CMPA and its guarantees by arguing that, "the Administrative Judge overrode the specific provisions of § 1-608.01(d-1) with the general provisions of §§ 1-616.51 and 1-

7

616.52(b), holding that Career Service Commanders, 'may not be demoted without cause.'" Petition for Review P. 9.

The Initial Decision of Judge Lim, however, in no way overrode § 1-608.01(d-1); rather, Judge Lim clearly applied the plain language of that statute and rightfully concluded that, "In both D.C. Official Code § 1-608.01(d-1) and § 5-105.01, the City Council has expressly provided that Inspectors and Commanders of the MPD may either by Career Service or Excepted Service employees." Initial Decision P. 8. This interpretation does not place the general above the specific, but rather applies the plain language of the specific in light of the overriding principles of the CMPA, which does apply to Career Service MPD officers.

Statutory interpretation is not performed in a vacuum and therefore (d-1) of § 1-608.01 cannot be applied without reference to (d-2) which clearly establishes Career Service promotions and Excepted Service appointments to Inspector, Commander and Assistant Chiefs of Police. Using Respondent's own logic, if "specific provisions" are to be accorded greater weight than "general provisions," then why is the specific provision of (d-2) to be accorded any less meaning than (d-1)? Why delineate so clearly that there are two different paths to the command staff, for example in the language, "The recommended criteria shall be the same for Career Service promotions and Excepted Service appointments to these positions," if the distinctions carry no meaning, if they are both subjects to the same discretionary whims of the Chief of Police?

      C.      **The D.C. Code and Legislative History Demonstrate That The Chief of Police Has Been Granted *Limited* Discretion To Demote Members of the Command Staff.**

Similarly to their pleadings before Judge Lim, Respondent's Petition for Review continues to ignore D.C. Code § 1-609.03 which in plain language limits the number of Excepted Service positions available to the Chief of Police. Once again, a harmonious interpretation of all

8

the applicable statutes in this case, §§ 1-608.01, 1-609.03, and 1-616.51 and 1-616.52(b), clearly establishes that the Chief of Police is entitled to discretion to create a command staff; however, this discretion is not limitless and without any procedural requirements.  D. C. Code § 1-608.01 clearly entitles the Chief of Police to return members of the command staff to the rank of Captain; however, those members of the command staff who are members of the Career Service may be demoted only based on cause and with notice.  Those members of the command staff who were appointed to Excepted Service positions may be demoted without cause or notice.  This interpretation, supported by Judge Lim's Initial Decision, does not require overriding any clauses, relying on Fiscal Impact Statements, or denying the applicability of the CMPA to MPD officers serving in the command staff.  Rather, a simple examination and application of § 1-609.03 makes clear that the legislature never intended the Chief of Police to have a limitless number of officers serving solely at her discretion.

Examining the history of Excepted Service within MPD, it is clear that the degree of discretion by the Chief over command staff has been reduced over time rather than enlarged.  In 1978 there was no stated limitation of the number of Expected Service personnel within MPD (see 25 DCR 5808), and then in 1999, § 1-610.03 (the previous codification of current § 1-609.03) was amended to contract the broad authority in the Excepted Service track to "no more than 10 excepted service sworn employees from MPD."  See 46 DCR 5315.  Finally, in 1999 the current version was created to include a 1% limitation related to the size of the entire force as well as the 10 officer cap.  See § 1-609.03.  Section 1-609.03 (originally D.C. Code 1-610.03) was amended by DC Law 12-175, which provides the language of the current DC Code 1-609.03, increasing to 220 the number of Excepted Service positions, limiting the number of Excepted Service positions that the Chief of Police may designate to a maximum of 1% of the

9

total number of authorized positions within the Metropolitan Police Department. The language expressly limits the number of Excepted Service policy positions. The original text of the proposed amendment contained no such express limitation on the Metropolitan Police Department, it simply

> increas[ed] to a total of 220 the number of all positions under the Mayor's personnel authority and the number of Excepted Service Employees that the Mayor may appoint to subordinate agencies, to allocate up to 40 of the positions subject to appointment by the Mayor to the Office of the Inspector General and, during a control year, a maximum of 20 positions to the Office of the Chief Financial Officer.

D.C. Bill 12-618 (1998).

Subsequent amendments to the Bill reveal the legislative intent of narrowing the scope of Excepted Service employees as it applies to the Metropolitan Police Department (MPD). An amendment offered by Chairman Cropp on June 2, 1999 contracted the statute as it applies to MPD. Amendment One added:

> In addition to the 220 Excepted Service Positions, the Chief of Police may designate up to 1% of the total number of authorized positions within the [MPD] as Excepted Service policy positions, no more than 10 of which may be filled by sworn members or officers.

Amendment 1 to Bill-618 (June 2, 1998).

This amendment was proposed due to the express request of the Executive Branch in a letter dated May 26, 1998. The contraction of the number of positions available to the Chief of Police offers explicit insight that the legislative intent was to expressly limit the power of the Chief to appoint employees to the Excepted Service. Clearly, if the legislature intended for the Chief of Police to have such broad discretion as suggested by Respondent's Petition, the Council

10

would have not have taken these steps to insure that only a limited number of "at-will" Excepted Service positions could be created and filled.

Furthermore, the legislative history of D.C. Code 1-609.03 provided in DC Bill 13-27, reflects that Excepted Service employees would be hired outside the MPD, <u>not</u> within the MPD. In the section-by-section analysis of DC Bill 13-27 the Preamble states:

> The [MPD] is seeking to fill the sworn, excepted service positions authorized . . . . It is imperative that the [MPD] have the authority to compensate senior law enforcement officials **hired from outside the Department** for their years of law enforcement experience. This legislation provides the authorization necessary for the Department to develop a compensation scheme for these officials . . . thereby creating the financial incentives necessary **to attract and hire candidates from outside the [MPD].**

Section-by-Section Analysis of "The Metropolitan Police Department Excepted Service Sworn Employees' Compensation System Amendment Act of 1999."

This is reiterated in a letter from Mayor Anthony Williams to Linda Cropp expressing the desire the Council pass the amendment in order to provide "authority . . . to immediately step up recruitment efforts to fill the remaining sworn excepted service positions and to institute systematic changes." Letter from Anthony Williams, February 26, 1999. This legislative history clearly indicates that the Excepted Service provisions were not intended to apply to already serving, traditional Career Service positions. Rather, the Excepted Service would be filled from "outside the MPD."

Additionally, the legislative history of DC Law 13-172, sheds light on the intent of the legislators in regards to MPD hiring policies. (DC Law 13-172 was encompassed by the Omnibus Public Safety Agency Reform Amendment Act of 2003 [DC Bill 15-32]). This

11

amended statute 1-632.03, reveals exactly how the legislators defined "Excepted Service" positions, stating in the Council Report of December 9, 2003, that

> When Charles Ramsey became chief of police in April 1998, the Council authorized him to designate additional positions within the department as Excepted Service positions, with up to 10 of the new positions to be filled by sworn members. Excepted Service positions are *essentially at-will political appointments* designed to reflect an administration's policy preferences and *do not carry the same civil service protections afforded the Career Service* which includes other uniformed members. . . . While each chief was expected to appoint highly qualified individuals from outside the department to high-level sworn positions . . . .

Council of the District of Columbia Report, Bill 15-32, the "Omnibus Public Safety Agency Reform Amendment Act of 2003, at 9, December 9, 2003.

While MPD may indeed be unique among D.C. agencies in terms of affording the Chief of Police power over her Command Staff, that power is not unlimited. Examining the legislative history of this statute makes clear that there are significant differences between Career Service and Excepted Service and if Respondent acknowledges that Petitioner was a Career Service Commander than he is entitled to the "civil service protections" afforded Career Service members referenced in the DC Council Report cited above. By limiting the number of Excepted Service positions that can be filled with sworn officers, the legislature was clearly indicating a desire to restrain the number of staff serving solely at the pleasure of the Chief of Police. This is the crucial distinction between Career Service and Excepted Service. The Respondent seeks to demolish this distinction with its attempt to grant the Chief wholesale power to demote any member of the command staff, regardless of Career Service status.

Therefore, the unique power of the Chief of Police permits her only 10 appointments to Excepted Service from among the rank and file officers. Respondents do not dispute that there

are far more than 10 officers holding the rank of Commander or Inspector. The Initial Decision in fact states that "Chief Lanier's command staff currently consists of: 7 Assistant Chiefs, 14 Commanders, and 9 Inspectors." Initial Decision P. 9. This explains why Robin Hoey and numerous other Commanders and Inspectors have been <u>promoted</u> to those positions. This also explains why these promotions are designated Career Service positions. Consistent with that scheme, these officers' annual evaluations clearly reflect that they are Career Service employees.

It is telling that not a single one of Respondent's pleadings in this case addresses these clear limitations on Excepted Service in MPD created by § 1-609.03. Recognizing that clearly all 30 members of the current command staff cannot be in the Excepted Service and therefore admittedly subject to demotion without notice or cause, Respondent is forced to now argue that even Career Service members are subject to demotion without notice or cause. Respondent's statement that the 2000 amendments to § 1-608.01 and § 1-632.03, "were necessary to make clear the Police Chief had to power to promote and demote without cause members of her command staff hired after January 1, 1980" is another overstatement of the authority granted by that provision.

Such a baseless claim again neglects to consider the subsequent addition of § 1-608.01(d-2)(1) which clearly establishes both Career Service and Excepted Service positions within the command staff. This Board should "look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning," as the "primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." <u>People Drug Stores v. District of Columbia</u>, 470 A.2d 751, 753 (D.C. 1983). The intent of the lawmakers in the current version of § 1-608.01(d-1) and (d-2) is present in its plain language referencing both Career Service and Excepted Service positions. Why make this

13

distinction if not to acknowledge that each category carries with it different rights and privileges? By providing for these two methods, the legislature in fact provided the Chief of Police with a method of expanding her command staff beyond the 10 positions allowed by the Excepted Service statute. In exchange for providing for increasing numbers in the command staff, however, those Career Service members in the command staff are entitled to be demoted only for cause and with notice an opportunity to respond.

## **CONCLUSION**

The Initial Decision reached the proper conclusion that "Career Service Inspectors and Commanders are promoted to their positions, while Excepted Service Inspectors and Commanders are appointed to their positions. The former may not be demoted by the Chief of Police without cause." Initial Decision P. 10. This Decision was based on a wealth of evidence provided by the parties and fully developed legal arguments interpreting the statutes. Judge Lim examined the applicable D.C. Code and regulations, Petitioner's personnel file, and the facts of this Agency action, and determined that the Agency's action could not be upheld. That ruling should be affirmed, as the Respondent has not provided in their Petition a cogent argument as to why Judge Lim's decision was based on an erroneous interpretation of the statute.

Respondent has attempted to overturn Judge Lim's Initial Decision with new arguments not previously presented in its Opposition to Petitioner's Motion for Summary Disposition. In their Petition for Review, as well as in the underlying case, MPD could present no contradictory evidence of Petitioner's Career Service status, nor could it ever reconcile the role of 1-609.03, limiting the number of Excepted Services members in the MPD with their theory of the law. These are fatal flaws to the Respondent's Petition for Review and strong supporting evidence that Judge Lim's determination was the proper one.

WHEREFORE, Petitioner Robin Hoey respectfully requests that the Board deny Respondent's Petition for Review and affirm the Initial Decision of Judge Lim.

Respectfully submitted,

HANNON LAW GROUP, LLP

_____
J. Michael Hannon, #352526
1901 18th Street, N.W.
Washington, D.C. 20009
(202) 232-1907
(202) 232-3704, Facsimile
jhannon@hannonlawgroup.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing **Petitioner's Response to Respondent's Petition for Review** was sent via first class mail this 21st day of February 2008, to:

Metropolitan Police Department,
C/O Teresa Quon Hyden
Senior Assistant General Counsel
300 Indiana Avenue N.W.
Room 4126
Washington D.C. 20001

 

                                                                J. Michael Hannon