**I** IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN HOEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Civil Action No. 07-00919(JDB) |
| | )      Oral Argument Requested |
| THE DISTRICT OF COLUMBIA, | ) |
| And CATHY LANIER | ) |
| | ) |
| Defendants. | ) |

## <u>NOTICE OF SUBSEQUENT AUTHORITY</u>

The defendants in the above captioned action submit the attached supplemental

authority, a Memorandum Opinion by Judge Urbina in *Washington v. District of Columbia*,

07-01031 (RMU)(D.D.C. March 8, 2008), finding that the federal court lacked jurisdiction

over constitutional due process claims (as well as a defamation-plus tort claims) when the

plaintiffs, career service employees, failed to exhause their administative remedies before

OEA. *See* Exhibit A. Judge Urbina found that plaintiffs' defamation-plus claims were barred

for the same reason.

While these defendants recognize that this Court is not bound by the *Washington*

decision, the defendants believe that Judge Urbina's memorandum opinion is relevant to

defendant's affirmative defense regarding plaintiff's failure to exhaust his administative

remedies. *See* District of Columbia's and Cathy Lanier's Amended Motion to Dismiss

and/or in the Alternative Motion for Summary Judgment, at Docket Entry #18. The

Supreme Court in *McKart v. United States*, 395 U.S. 185, 204 (1969), clarified the purpose

of the doctrine of the exhaustion requirement by stating, " . . . notions of administrative

autonomy require that the agency be given a chance to discover and correct its own errors

. . . it is possible that frequent and deliberate flouting of administrative processes could

weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Id.*

OEA has excercised its primary jurisdiction over this matter. *See* record

herein. This Court should therefore decline federal jurisdiction over this matter as

the plaintiff has an adequate state remedy at law.  As the Court of Appeals has noted,

"with few exceptions, the CMPA is the exclusive remedy for a District of Columbia

public employee who has a work-related complaint of any kind."  *Baker v. District*

*of Columbia*, 785 A.2d 696, 697 (D.C. 2001) (citations omitted).  As such, "'the

Superior Court is not an alternative forum …, but rather serves as a last resort for

reviewing decisions generated by CMPA procedures.'"  *Id. at* 698.

Plaintiff's claims should therefore, be dismissed.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General,
Civil Litigation Division

_____/s/   Patricia A. Jones_____
PATRICIA A. JONES  [428132]
Chief, General Litigation Section IV

_____/s/    Leah  Taylor_____
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 727-6295

leah.taylor@dc.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CYNTHIA WASHINGTON *et al.*,                  :
                                              :
                    Plaintiffs,               :        Civil Action No.:        07-1031 (RMU)
                                              :
          v.                                  :        Document Nos.:           5, 12
                                              :
DISTRICT OF COLUMBIA *et al.*,                :
                                              :
                    Defendants.               :

## MEMORANDUM OPINION

### Granting the Defendant's Motion to Dismiss;
### Denying the Plaintiff's Motion for Leave to File a Second Amended Complaint

## I. INTRODUCTION

This case concerns a prison break, mass personnel terminations, mass personnel

reinstatements and the various efforts undertaken by the defendant[1] (the District of Columbia)

and the plaintiffs (D.C. Jail security officers) to enlist this court in a tug-of-war over the right of

the D.C. Department of Corrections ("DOC") to subject its employees to a second round of

disciplinary review and firings after an administrative appeals board found the preliminary round

deficient.  Because administrative review of these events has not concluded but in fact continues

in the pertinent D.C. agencies, the facts before the court are undeveloped, the issues unripe and

the suit as a whole is untimely.  In other words, the plaintiffs have failed to exhaust their

administrative remedies for challenging their terminations under applicable D.C. law.  Both their

constitutional due process claims and their common-law tort claims are based on events properly

remedied in the first instance through the procedures dictated by D.C.'s Comprehensive Merit

Protection Act ("CMPA"), D.C. Code §§1-601.1 *et seq.*  Because this case is not properly before

---

[1]        For readability, the court refers to the defendants in the singular or as simply "the District."

it, the court grants the defendant's motion to dismiss. Because the plaintiffs' pending motion for leave to file a second amended complaint would not cure any of the deficiencies cited herein, the court denies it.

## II. BACKGROUND

### A. Factual History

On June 3, 2006, two inmates escaped from the D.C. Jail. Am. Compl. ¶ 3. They were recaptured without incident the next day. *Id.* ¶ 6. The day after their capture, DOC Director Devon Brown issued written notification to twelve D.C. Jail employees, including the plaintiffs, placing them on paid administrative leave pending further investigation of the escape. *Id.* On July 20, 2006, the DOC Office of Internal Affairs ("OIA") released the report of its investigation, which determined that the plaintiffs' neglect of their duties and intentional conduct had contributed to the escape. Def.'s Mot. to Dismiss at 5. On July 26, 2006, at a press briefing Director Brown announced the summary firings of the plaintiffs for dereliction of duty. Am. Compl. ¶ 9. The plaintiffs were not apprised of this decision in advance. *Id.* ¶ 9. On the same day as the terminations, D.C. officials amended the District of Columbia Personnel Manual ("DCPM") to extend the deadline for sending written notification to summarily terminated D.C. employees from three days to thirty days. *Id.* ¶ 12. On July 28, 2006, the scope of the amendment was broadened, resulting in its application to one of the plaintiffs. *Id.* ¶ 13.

The plaintiffs did not receive formal notice of their terminations until August 1, 2006. *Id.* ¶ 15. On August 24, 2006, they received more comprehensive written notices, instructing them that an administrative review would be conducted by the Office of Administrative Hearings

("OAH").  *Id.* ¶ 15.  Director Brown and the OAH then entered into a memorandum of understanding to effectuate the procedures described in the August 24, 2006 notices and to assure the plaintiffs that "administrative proceedings are held by a body that is independent of the DOC."  *Id.* ¶ 16.  The DCPM requires that a final decision on summary removal be issued within 45 days of the delivery of a summary removal notice.  *Id.* ¶ 17.  To afford the OAH adequate time to reach a decision, this deadline was extended to December 15, 2006.  *Id.* ¶ 21.  On December 11, 2006, the OAH issued a report and recommendation concluding that the summary removals could not be sustained and recommending that the plaintiffs be reinstated.  *Id.* ¶ 21.  On January 9, 2007, Director Brown submitted remand notices, directing the OAH to reconsider its decision.  *Id.* ¶ 22.  On March 2, 2007, OAH affirmed its conclusions.  *Id.* ¶ 23.  On March 16, 2007, Director Brown rescinded the summary removals but replaced them with 20-day non-summary termination notices predicated on the same allegations of misconduct and negligence.  *Id.* ¶ 28.

## B.  Procedural History

The plaintiffs filed a complaint with this court on June 8, 2007.  The complaint challenges the procedures by which the plaintiffs were initially terminated, then reinstated, and finally placed on leave pending termination.  Am. Compl. ¶¶ 1-31.  Specifically, the plaintiffs bring claims of Fifth Amendment due process violations, defamation and intentional and negligent infliction of emotional distress.  *Id.* ¶¶ 32-52.  On July 31, 2007, the defendant filed a motion to dismiss.  On August 28, 2007, the plaintiffs filed a motion for partial summary judgment, even though discovery had not yet commenced.  Then, on September 18, 2007, the plaintiffs filed a motion for leave to file a second amended complaint.  Those motions were

under consideration when the court received an emergency motion for a temporary restraining

order from the plaintiffs on December 20, 2007.  The motion indicated that Dr. Henry Lesansky,

the hearing officer supervising the plaintiffs' second round of disciplinary review, had

recommended the plaintiffs' removal.  Pls.' Mot. for Prelim. Inj. at 7.  Director Brown adopted

his recommendation and issued final notices of termination on December 14, 2007 that went into

effect on December 17, 2007.  *Id.*  On January 11, 2008, the court denied the request for a

preliminary injunction to reinstate the plaintiffs.  Order (Jan. 11, 2008).  The court now devotes

its full attention to the defendant's motion to dismiss.

## III.  ANALYSIS

### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of his

prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or

"plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134,

4

136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

**B.  The Court Grants the Defendant's Motion To Dismiss**

**1.  The Amended Complaint Fails to State a Claim
Because the Plaintiffs Failed to Exhaust Administrative Remedies[2]**

The defendant argues that the plaintiffs filed their civil suit in federal court prematurely.

They should, the defendant advised, have waited to exhaust their administrative remedies –

namely grievance arbitration per the terms of the collective bargaining agreement ("CBA")

entered into by the DOC and their union, the Fraternal Order of Police, or review through the

Office of Employee Appeals ("OEA") per the terms of the CMPA – for challenging Director

Brown's decision to restart the dismissal proceedings.  Def.'s Mot. to Dismiss at 10.

The plaintiffs maintain that their §1983 claims do not depend on completing the

administrative process as set forth in the CMPA and the CBA.  Pls.' Opp'n to Def.'s Mot. to

Dismiss ("Pls.' Opp'n") at 27.  Their due process claims do not, the plaintiffs assert, concern

their terminations but rather their constitutional protections of due process, which the defendant

---

[2]     The plaintiffs' proposed second amended complaint is essentially based on the same set of facts
as the first amended complaint.  *See* Pls.' Mot. for Leave to File Second Am. Compl. at 3
(representing that the plaintiffs' second amended complaint "includes evidence that satisfies D.C.
Code 12-309, the statutory notice requirement, and . . . . is based on the same set of
circumstances detailed in the First Amended Complaint; however, it identifies clearly that
Defendant Brown and Defendant Lesansky are being named in their individual capacity and that
the constitutional violations committed against the DOC Employees are the product of a District
of Columbia policy or custom").  An amendment of pleading that could not withstand a motion
to dismiss should be denied.  *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir.
1999).  The second amended complaint does not cure the deficiencies outlined in the proceeding
text of this opinion; however, the plaintiffs maintain that "§1983 claims brought against city
officials in their personal capacity are not subject to the exhaustion requirement."  Pls.' Supp.
Mem. at 4 n.2.  But, there appears to be no basis in law for this distinction.  *See United States v.
Johnson*, 368 F. Supp. 2d 30, 34 (D.D.C. 2005) (maintaining claims against defendants in their
individual capacities because District of Columbia's motion to dismiss explicitly restricted scope
of motion to defendants in their official capacities); *Runkle v. Gonzales*, 391 F. Supp. 2d 210,
(D.D.C. 2005) (holding that constitutional claims against defendants in their individual capacities
were precluded by plaintiff's failure to exhaust administrative remedies under pertinent statutory
scheme).  The court, therefore, denies the plaintiffs' motion for leave to file.

6

has violated.  *Id.* at 27-28.  Indeed, the Supreme Court, the plaintiffs cite, has held that Congress assigned to the courts the role of protecting constitutional rights and did not intend under most circumstances for civil rights claims to be initially addressed through state administrative procedures.  *Id.* at 28 (citing *Patsy v. Bd. of Regents of the State of Fla.*, 457 U.S. 496, 516 (1982)).  In accord therewith, the plaintiffs refer the court to the decision *Roache v. District of Columbia*, 654 A.2d 1283 (D.C. 1995), in which the D.C. Court of Appeals held that a plaintiff alleging racial discrimination under §1983 did not need to first exhaust administrative remedies, as required under the D.C. Human Rights Act, before bringing suit in federal court.  *Id.* at 27.  Moreover, should the court conclude otherwise, it should still find that the plaintiffs exhausted their remedies, as, having won their initial review only to be subjected to a "do over," they can take no further action.  *Id.* at 29.

The defendant takes issue with the plaintiffs' characterization of the law.  Allegations of civil rights deprivations based on racial discrimination are categorically distinct from allegations of due process violations based on a failure to follow termination procedures, the defendant avers.  Def.'s Reply to Pls.' Opp'n ("Def.'s Reply") at 3.  When an alleged constitutional violation is intertwined with an alleged statutory violation, the court should defer to the legislature's preferred scheme for resolution of the dispute.  *Id.* (citing *Nat'l Treasury Employees Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992)).  Here, the OEA has primary jurisdiction to resolve the plaintiffs' claims.  *Id.*  The plaintiffs, therefore, should not be allowed to undermine the administrative process by availing themselves of initial review by the OAH and then refusing to participate in subsequent stages of appeal.  *Id.*

### a. The CMPA Required the Plaintiffs to Exhaust Their Remedies for All of Their Claims

Before announcing its decision, the court should clarify a few key preliminary legal points. State administrative exhaustion requirements are treated as "non-jurisdictional" by federal courts, "meaning that the exhaustion requirement is a prudential doctrine exercised as a matter of judicial discretion." *Johnson v. Dist. of Columbia*, 368 F. Supp. 2d 30, 36 (D.D.C. 2005). A plaintiff's failure to satisfy this condition, then, constitutes a failure to sufficiently plead a necessary element of a federal cause of action. *Hidalgo v. FBI*, 344 F.3d 1256, 1259-60 (D.C. Cir. 2003). When enforcing the "non-jurisdictional" exhaustion requirement, the D.C. Circuit balances the interests of the plaintiff in immediate judicial relief against the interests that exhaustion requirements promote generally, including agency autonomy and judicial efficiency. *Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). In a case involving a requirement to exhaust state administrative remedies, federalism and comity considerations arise, tilting the scales further in favor of requiring exhaustion. *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 530 (1977); *Johnson*, 368 F. Supp. 2d at 43.

The plaintiffs were employees of the District of Columbia subject to the provisions of the CMPA. D.C. Code §§1-601.1 *et seq.* A principal purpose of the CMPA is to "assure that the District of Columbia government shall have a modern flexible system of public personnel administration, which shall . . . . [e]stablish impartial and comprehensive administrative or negotiated procedures for resolving employee grievances." *Id.* §1-601.2(a)(5); *cf. Robinson v. Dist. of Columbia*, 748 A.2d 409, 411 (D.C. 2000) (holding that "with few exceptions, the CMPA is the exclusive remedy for a District of Columbia public employee who has a

work-related complaint of any kind").  The CMPA provides that "[a]n appeal from a removal . . .

may be made to the [OEA]."  *Id.* § 1-616.52(b); *see also id.* §1-603.03(a) (detailing the procedure

for appeal to OEA from adverse actions).  The provision governing OEA appeals provides the

employee with a right to judicial review of the OEA's decision in D.C. Superior Court.  *Id.*

§1-603.03(d).

The plaintiffs also have recourse to the CBA executed by their union and the District.

Where a CBA provides an alternative grievance procedure, an employee may opt to avail herself

of either the contractual procedure or that provided by the CMPA, "but not both."  *Id.* §

1-616.52(e).  Should the employee choose to arbitrate under her CBA, she may appeal the

decision to the Public Employee Relations Board ("PERB").  *Id.* §1-605.02(6).  And, finally, the

CMPA provides for review of the decision of the applicable appellate authority – OEA or PERB

– in D.C. Superior Court.  *Id.* §§ 1-605.02(12), 1-617.13(c).

An exception to the exhaustion requirement exists "where administrative remedies are

inadequate."  *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir.

1986).  "The administrative process is inadequate where the agency has expressed a willingness

to act, but the relief it will provide through its action will not be sufficient to right the wrong."

*Id.*  A few decisions have generously interpreted this exception to prohibit a court from

dismissing federal claims in cases in which a D.C. employee requests punitive damages.  *See,*

*e.g.*, *McManus v. Dist. of Columbia*, 2007 WL 4573442 (D.D.C. Dec. 31, 2007) (Judge Kollar-

Kotelly) (affirming jurisdiction over D.C. employees' federal due process claims alleging that

defendants engaged in a conspiracy to deprive them of administrative relief in connection with

employment benefits because prayer for relief included punitive damages); *Am. Fed. of Gov't*

*Employees v. Dist. of Columbia*, 2005 WL 1017877, at *5 (D.D.C. May 2, 2005) (Judge Bates) (affirming jurisdiction over public union's First Amendment claim regarding change in leave policy of D.C. Fire Department restricting access to public officials); *Crockett v. D.C. Metro. Police Dep't*, 293 F. Supp. 2d 63, 67 (D.D.C. 2003) (Judge Leon) (holding that because "Crockett has requested . . . punitive damages that the OEA is not authorized to grant [under the CMPA,] . . . the administrative forum . . . could not have provided a full and fair opportunity to litigate [the plaintiff's] federal claims").  Others have interpreted it narrowly, as the court does today.  *See Johnson*, 368 F. Supp. 2d at 51 n.9 (Judge Lamberth) (dismissing federal due process, defamation and emotional distress claims, because causes of action were intimately connected with employment dispute covered under the CMPA).[3]  Because the plaintiffs' complaint includes a request for punitive damages, the court will address this point, even though the parties do not raise it in their briefs.

The decisions in *Crockett*, 293 F. Supp. 2d at 67, and *McManus*, 2007 WL 4573442, rest on an interpretation of the D.C. Circuit's reasoning in *Bridges v. Kelly*, which reviewed a district court's *Younger*-abstention-based dismissal of a claim against the District of Columbia for compensatory and punitive damages that was subject to an administrative exhaustion requirement, 84 F.3d 470, 477 (D.C. Cir. 1996).  *Bridges* held that "the inability of the D.C. system to afford [the plaintiff] full relief he seeks in connection with his federal claims is sufficient to preclude dismissal under *Younger*."  84 F.3d at 477.  In *Bridges*, as in *Crockett* and

---

[3]     In a supplemental memorandum of law filed without leave of court, the plaintiffs argue that *Johnson* "addressed only common law claims."  Pls.' Supp. Mem. at 3.  They are mistaken.  Judge Lamberth's opinion clearly indicates that the plaintiff had alleged constitutional due process claims.  *See Johnson*, 368 F. Supp. 2d at 42-43 (stating that "this case involves constitutional and common law challenges").

*McManus*, the decision rested on the inability of the agency to award punitive damages. *See id.* But the *Bridges* court conducted its analysis in the context of an inquiry into the propriety of dismissal pursuant to the *Younger*-abstention doctrine, not a direct inquiry into applicability of administrative exhaustion. *See id.* at 475-76. The *Bridges* court noted that "[f]or the *Younger* doctrine to apply, 'a rigid three-prong test must be satisfied,'" *id.* at 476 (quoting *Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989)), one prong of which requires the proponent of federal-court abstention to show that "the [state] proceedings . . . afford an adequate opportunity in which to raise the federal claims," *Hoai*, 866 F.2d at 1518.

Thus, the *Bridges* decision simply addressed whether this prong of the *Younger* test had been satisfied. In contradistinction, the D.C. Circuit in *Weinberger* holds a plaintiff seeking to avoid exhaustion to the higher standard of demonstrating that administrative (as opposed to federal judicial) relief would "not be sufficient to right the wrong." 795 F.2d at 107. As Judge Lamberth ably explained: "The *Younger* question asks whether the state proceeding affords the claimant the potential for the same measure of recovery that he or she might obtain through a federal cause of action, while the exhaustion question asks whether the administrative proceeding affords the claimant a recovery commensurate with his or her remedy, regardless of whether he or she might recover more by filing a federal-law claim in federal court." *Johnson*, 368 F. Supp. 2d at 51 n.9. Thus, the inability to obtain punitive damages administratively matters only if recovery including punitive damages would be proportional to the claimant's injury. This question on the merits has not been raised and will not be addressed here.

And, as for the decision in *American Federation of Government Employees*, in that case the plaintiffs brought a First Amendment claim alleging viewpoint discrimination, the factual

11

predicate of which did "not rest on allegations of violations of the CMPA."  2005 WL 1017877,

at *5.  Moreover, there, the plaintiffs did not make a "knowing decision not to pursue the

available [CMPA] administrative remedies."  *Id.* (citing *Hairston v. Dist. of Columbia*, 638 F.

Supp. 198 (D.D.C. 1986)).  Here, the plaintiffs' constitutional claims are intimately intertwined

with their remedies under the CMPA for termination.  Indeed, the court cannot even estimate the

scope of any constitutional injury while administrative proceedings are pending.  Such

proceedings might (1) result in a decision harmonizing the defendant's actions with the law,

which would set the stage for an appeal to local judicial institutions; or (2) result in a decision

declaring the defendant's actions inconsistent with the law, which would vindicate the plaintiffs'

claims and affect the contours and extent of their inchoate due process and defamation injuries.

Were the court to decide the merits of the plaintiffs' constitutional claims now, it would prejudge

local procedural questions pending before a local adjudicatory body.  For these reasons, the court

holds that the plaintiffs are required to exhaust their administrative remedies for all of their

claims.

### b.  The Plaintiffs did not Exhaust Their Administrative Remedies under the CMPA for Their Due Process Claims

Here, the plaintiffs do not allege in their pleadings that, in response to Director Brown's

December 14, 2007 decision to adopt Hearing Officer Dr. Lesansky's report and

recommendation to summarily remove them, they filed an appeal with the OEA or made a timely

request that their union grieve their removal.  *See generally* Am. Compl.  Nor have they, since

the intervention during these proceedings of their final dismissal by Director Brown, sought leave

to amend their complaint to this effect.  This is fatal to their case as, under the CMPA, all of the

plaintiffs' claims are subject to administrative redress.

The first of their claims alleges that the plaintiffs were deprived of their constitutionally protected interest in continued employment without procedural due process of law. First Am. Compl. ¶¶ 39-42. Specifically, the claims charge the defendant with (1) revising the DCPM to extend the notice deadline from three days to thirty; (2) subjecting the plaintiffs to the disciplinary process a second time; and (3) violating its own procedural regulations. *Id.* Couching the claim in constitutional terms will not immunize it from dismissal pursuant to the exhaustion requirement. The D.C. Circuit has held that "when an alleged constitutional violation 'is intertwined with a statutory one, and [the legislature] has provided the machinery for the resolution of the latter,' the plaintiff must exhaust [her] administrative remedies before a district court may hear [her] case." *King*, 961 F.2d at 243. Here, because the statutory and constitutional claims are "premised on the same facts" and "the administrative process [is] fully capable of granting full relief," exhaustion is required. *Id.* (citing *Andrade v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984)); *see also Marine Mammal Conservancy*, 134 F.3d at 413-14 (holding that the plaintiff would be "very much mistaken in believing that there is some bright-line rule allowing litigants to bypass administrative [processes] simply because one or all of their claims are constitutional in nature").

The plaintiffs' due process claims are predicated on the failure of the DOC and Director Brown to properly adhere to the CMPA's requirements for disciplinary actions. The CMPA provides a remedy for such claims: an appeal to OEA or resort to grievance arbitration. Allegations that District officials failed to comply with the procedural requirements for adverse actions against employees, such as the requirement of timely notice or the prohibition on

13

imposing a penalty greater than that recommended by the pre-termination hearing OAH ALJ, may be raised in the course of challenging the adverse action. *See Dist. of Columbia v. Thompson*, 593 A.2d 621, 628 (D.C. 1991) (discussing how procedural inadequacies related to an adverse action, such as "allegedly inaccurate letters of warning," may be addressed under the CMPA. These issues have yet to be raised in the plaintiffs' petition of appeal to the OEA, demonstrating that administrative remedies for these alleged violations have not been exhausted. Were this court to attempt to resolve them here, it would (1) deprive local adjudicatory apparati of their independent authority to rule as they deem fit; (2) ignore the expertise of local appellate institutions more familiar with their own governing sources of law; and (3) prematurely decide a case or controversy that might, if allowed to unfold at its own pace, resolve itself. The court refuses to do so.

### c. The Plaintiffs did not Exhaust Their Administrative Remedies under the CMPA for Their Defamation-Plus Claims

The plaintiffs' claims alleging "defamation plus" are also amenable to resolution through the administrative remedies provided by the CMPA. *See Thompson*, 593 A.2d at 629-636 (discussing how the CMPA grievance system supplants common-law tort remedies for claims of "wrongful treatment" cognizable under the remedial provisions of the CMPA). When tort claims are predicated upon conduct that may be a proper subject of a grievance under the CMPA, the exclusivity principles attendant to CMPA administrative remedies will "preclude litigation of . . . [claims such as] emotional distress and defamation" prior to exhaustion of administrative

14

remedies.[4]  *See Thompson*, 593 A.2d at 635; *see also King v. Kidd*, 640 A.2d 656, 663 (D.C.

1993) (recognizing that "the CMPA [provides the exclusive remedy for] a common law action . .

. if the employee claims wrongful treatment or injury cognizable as a 'personnel issue' under the

Act's 'performance ratings,' 'adverse actions,' and employee 'grievance' provisions").  D.C.

courts have not hesitated to dismiss defamation and emotional distress claims to enforce this

exhaustion principle.  *See Thompson*, 593 A.2d at 635 (dismissing employee's common-law

defamation and emotional distress claims that "arose out of disputes with her supervisor" as

requiring exhaustion under CMPA); *Baker v. Dist. of Columbia*, 785 A.2d 696, 698 (D.C.  2001)

(dismissing for failure to exhaust employee's defamation and emotional distress claims arising

out of "a work related complaint" even where filing of tort claims "precedes the formal filing of a

grievance"); *Stockard v. Moss*, 706 A.2d 561, 565-66 (D.C. 1997) (concluding that employee's

slander claim was subject to CMPA exhaustion requirements)

     The plaintiffs' defamation claims are predicated upon statements made by Director

Brown.  The amended complaint alleges that he: (1) frequently and publicly accused the plaintiffs

of perpetrating criminal acts in connection with the jail escape; (2) accused them of being too old

for their jobs; and (3) accused them of being unable to apply the prisoner classification system.

Am. Compl. ¶ 48.  The plaintiffs also cite a press release on the DOC's web site posted on July

---

[4]    The court notes that insofar as any "substantial question" remains regarding whether the CMPA
provides a remedy for the plaintiffs' tort claims, "the Act's procedures must be followed, and the
claim must initially be submitted to the appropriate District agency." *Grillo v. Dist. of Columbia*,
731 A.2d 384, 386 (D.C. 1999).  For present purposes, the determination whether the tort claims
fall within the CMPA's employee grievance provisions "should be made, in the first instance, by
the [OEA], which has primary jurisdiction to determine whether such claims are within its
jurisdiction. *Armstead v. Dist. of Columbia*, 810 A.2d 398, 400-01 (D.C. 2002).  Accordingly,
the court "need reach only the fairly narrow conclusion that, whether or not the plaintiffs' tort
claims are covered by the CMPA, the claims should be presented to the appropriate District
Agency in the first instance." *Johnson*, 368 F. Supp. 2d at 48.

27, 2006, reading: "11 individuals have been terminated from employment with the DOC for their roles leading to the escape and to the breach of security . . . . [and] [t]he United States Attorney's Office is currently conducting a criminal investigation into the escape." *Id.*

These allegedly defamatory remarks arose out of Director Brown's handling of the plaintiffs' discipline following an internal investigation designating them responsible (in part) for the jail break. "A supervisor's explanation of his handling of adverse employment actions, even if made outside the formal process, falls within the scope of the CMPA because the explanation relates to a 'personnel issue.'" *Sanders*, 16 F. Supp. 2d at 15 (discussing and quoting *Stockard v. Moss*, 706 A.2d 561, 565 (D.C. 1997)). They fall strictly within the employment adverse action context contemplated by the CMPA.[5] The latter's remedies are, therefore, exclusive. *See Sanders v. Dist. of Columbia*, 16 F. Supp. 2d 10, 12-15 (D.D.C. 1998); *Johnson*, 368 F. Supp. 2d at 47 (holding that "statements to the Washington Post [seeking] to explain and justify the removal of [law enforcement] officers by explaining the administration's belief that those officers' negligence was responsible for the [detainee] escapes" fell within the scope of the CMPA). The court, therefore, concludes that Director's Brown statements made outside the

---

[5]    The court recognizes that the plaintiffs' claims of "defamation plus" actually sound in substantive due process, rather than garden-variety tort law. Am. Compl. ¶ 20; *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998). The gravamen of such a claim is that a defendant has deprived a plaintiff of his liberty interest in employment in a specific field by spreading defamatory statements impugning his character to such a degree as to "destroy a plaintiff's ability to pursue his chosen profession." *O'Donnell*, 148 F.3d at 1141 (internal quotations omitted). To maintain this claim, a plaintiff "must show that the harm occurred in conjunction with . . . some tangible change in status." *Id.* Here, the plaintiffs' ultimate employment status remains uncertain because of pending OEA proceedings. Thus, even though the plaintiffs dress their defamation claims in constitutional garb, they are effectively indistinguishable from common-law defamation claims in regards to their coverage under the remedies of the CMPA for employment disputes.

16

formal administrative process for handling removal for cause sufficiently relate to a "personnel" issue to require the exhaustion of CMPA remedies prior to filing suit.

### d. The Plaintiffs did not Exhaust Their Administrative Remedies under the CMPA for Their Emotional Distress Claims

The plaintiffs predicate their infliction-of-emotional-distress tort claims, which allege that the defendants "acted in an extreme and outrageous fashion and negligently in terminating Plaintiffs with the intent and/or result of causing them emotional distress," on the same facts supporting their other claims. Am. Compl. ¶ 51. The court has already concluded that the defendant's allegedly defamatory statements regarding the plaintiffs' culpability for the jail escape were probably directly related to "personnel action" within the meaning of the employee grievance provisions of the CMPA. And the court has also ruled that both the decision to terminate the plaintiffs and the defendant's procedurally unconventional "do over" fall within CMPA remedial provisions, requiring exhaustion before those disputes may be reviewed in federal court. Likewise, the conduct underpinning the plaintiffs' emotional distress claim arises out of the plaintiffs' dispute with their former employer; thus, the remedial provisions of the CMPA govern. *Johnson*, 368 F. Supp. 2d at 48; *see also Thompson v. Dist. of Columbia*, 428 F.3d 283, 288 (D.C. Cir. 2005). Because the plaintiffs have not exhausted the available administrative remedies for their emotional distress claims, those too must be dismissed from this court.

17

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss and denies the plaintiffs' motion for leave to file a second amended complaint.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of March, 2008.


RICARDO M. URBINA
United States District Judge

18