UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBIN HOEY,

      Plaintiff,

      v.

THE DISTRICT OF COLUMBIA, et al.,

      Defendants.

Civil Action No. 07-00919 (JDB)

## MEMORANDUM OPINION

Plaintiff Robin Hoey, a high-ranking member of the Metropolitan Police Department ("MPD"), brings this action seeking injunctive and monetary relief against the District of Columbia and Cathy M. Lanier, the Chief of Police of the MPD. Specifically, Hoey seeks a declaration that he was unlawfully demoted from the rank of Commander to the rank of Captain on April 19, 2007 in violation of 42 U.S.C. § 1983 and he asks to be reinstated to his former title and post. In addition, Hoey alleges that he was defamed by certain statements made by Lanier and other officials in the aftermath of his demotion and that defendants' allegedly outrageous conduct towards him in connection with the demotion constitutes intentional infliction of emotional distress. As further relief, Hoey seeks both compensatory and punitive damages. Defendants have moved to dismiss the complaint and Hoey has cross-moved for partial summary judgment. Those motions are now fully briefed and ripe for resolution. Upon careful consideration, and for the reasons set forth below, the Court will grant defendants' motion and deny Hoey's motion.

## BACKGROUND

Because this case involves the District's extensive personnel organization, the Court will first briefly outline the relevant provisions of that system. The District's Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-608.01 et seq., "establishes a merit personnel system that, among other things, provides for employee 'performance ratings,' including 'corrective actions' when necessary; [and] . . . employee discipline through 'adverse action' proceedings." District of Columbia v. Thompson, 593 A.2d 621, 625 (D.C. 1991) (citing various provisions of the CMPA). By its terms, the CMPA creates a Career Service "for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause." Fonville v. District of Columbia, 448 F. Supp. 2d 21, 26 (D.D.C. 2006) (citing D.C. Code §§ 1-608 & § 1-616.51). The CMPA also provides that employees of the Career Service "can only be disciplined for cause and prior notice must be given." Id. Demotion and pay grade reductions are included within the ambit of "discipline." See D.C. Code § 1-616.52(b). Aggrieved parties may appeal an adverse disciplinary action to the Office of Employee Appeals ("OEA"). Id. The CMPA also authorizes review of an OEA final decision in the Superior Court of the District of Columbia. Id. § 1-606.01(d).

Turning to the undisputed facts of this case, Hoey first joined the MPD on December 16, 1985. Defs.' Suppl. Br. Ex. 1 (hereinafter "OEA Decision") at 2 ¶ 1.[1] He was initially hired as a Career Service police officer and he gradually ascended to the rank of Lieutenant over the course of several years. Id. ¶¶ 1-2. In the beginning of 2000, Hoey was promoted to Captain. Id. ¶ 1.

---

[1] As noted, the facts of this case are undisputed. The Court refers to certain portions of OEA's decision to supply factual background information here because it records certain dates and actions with a higher degree of precision than the filings in this proceeding.

The MPD personnel forms memorializing that promotion indicated his Career Service status.  Id.
¶ 2.  Then again on April 22, 2001, he was promoted to the rank of Inspector, with the
accompanying personnel action form once again indicating that he was a Career Service
employee.  Id. ¶ 3.  Finally, on August 1, 2004, Hoey was promoted to Commander.  Id. ¶ 4.  As
before, the personnel documentation recording that change in rank indicated that Hoey received a
"promotion" and that he was a Career Service employee.  Id.

Following his election, Mayor Adrian Fenty appointed defendant Cathy Lanier as Chief of
Police and she was confirmed in that role on April 3, 2007.  Id. ¶ 5.  Thereafter, on April 19, 2007,
Chief Lanier summoned Hoey to her office.  Am. Compl. ¶ 7.  Once he arrived, she informed him
that she was transferring him from command of the Sixth District to the D.C. Central Cellblock.
Id.  Lanier then demoted Hoey to the rank of Captain.  Id.  At the time, Lanier provided no
explanation for her action.  Id.  Instead, she merely informed Hoey that he was an at-will
employee subject to demotion or termination at any time.  Id.  As OEA later recognized, MPD has
never asserted that Hoey was demoted for cause.  See OEA Decision at 2 ¶ 8.

News of Hoey's demotion spread quickly through "the public press . . . [and] various
community meetings with citizens of the District of Columbia, including citizens of the Sixth
District where [Hoey] is held in high esteem."  Am. Compl. ¶ 8.  Believing that he had been the
subject of employment-related discipline without the protections afforded to him by the CPMA,
Hoey appealed his demotion to OEA on May 16, 2007.  On the same day, he filed his initial
judicial complaint.  In that complaint, he alleged broadly that he was a member of the Career
Service who could not be demoted without cause.  Lanier's action, then, allegedly had unlawfully
deprived Hoey of a property interest without adequate due process.  In addition, because of what

-3-

he viewed as the patent unlawfulness of defendants' conduct regarding his demotion, Hoey added a claim for intentional or negligent infliction of emotional distress.

Shortly after the initial complaint was filed, Hoey alleges that Lanier "took steps to defame [him] in an effort to deflect criticism of her decision to demote him." Id. ¶ 10(a). Thus, Lanier allegedly informed Councilmember Yvette Alexander that Hoey was "under investigation within the Metropolitan Police Department." Id. Moreover, Hoey contends, Lanier "further directed Councilmember Alexander to tell any citizen who inquired about [Hoey] that he was under investigation." Id. Hoey was not aware of any such investigation at the time. In fact, Lanier also allegedly told Ms. Alexander that Hoey "had several sexual harassments [sic] complaints placed against him," an assertion that Hoey further denies. Id. ¶ 10(b). And in response to a citizen's inquiry, Yvonne Smith, the Acting Director of the Office of Community Outreach in the Executive Office of the Chief of Police, allegedly sent an email that "repeatedly implies that [Hoey] had private personnel matters which would justify his demotion." Id. ¶ 10(c). Indeed, in her email Ms. Smith indicated that she knew of "many many many many many many complaints" that had been lodged against Hoey. Id. ¶ 10(d). In response, Hoey amended his complaint on August 20, 2007 to add a "defamation plus" claim against defendants.

In the meantime, an OEA hearing officer conducted a "Prehearing Conference" on August 29, 2007. See OEA Decision at 1. Pursuant to that conference, Hoey submitted a motion for summary judgment and MPD submitted a response. Id. MPD made two primary arguments in its filing. First, it maintained that all Commander positions fall within the so-called Excepted Service, which consists of appointed positions that are exempt from the customary protections of the CMPA. Because members of the Excepted Service are at-will employees, they may be

removed from office or demoted without cause at any time.  Id. at 5; see also D.C. Code § 1-609.05 ("Employees in the Excepted Service . . . do not have any job tenure or protection.").  Thus, Hoey, who held the rank of Commander, must have been an Excepted Service employee, MPD argued, because he held an Excepted Service position.  In fact, MPD insisted that Hoey's promotion to Inspector in 2001 was an Excepted Service appointment and that he lost his Career Service status at that time.

OEA, which issued its Initial Decision on December 14, 2007, rejected that contention.  Construing the relevant statutory provisions, OEA determined that, contrary to MPD's position, not all Commander positions are filled by Excepted Service employees; instead, some Commanders are promoted from Career Service positions and retain that status.  Id. at 6-8.  Thus, while MPD was correct that Excepted Service Commanders can be demoted at any time without cause, Career Service Commanders are entitled to the protections outlined in the CMPA.  And as for Hoey, OEA stated that "[t]he best evidence regarding [his] status is his official personnel record."  Id.  That documentation indicated that in every recorded promotion, including his promotion from Inspector to Commander, Hoey was noted as a Career Service employee.  Id.  Thus, because MPD "ha[d] nothing to show that [Hoey] was ever appointed into an Excepted Service position," OEA concluded that he had remained a Career Service employee throughout his entire tenure with MPD.  Id.

Next, MPD argued that even if some Commanders are Career Service employees and Hoey was one such Commander, "the Chief of Police is nevertheless authorized to return District Commanders to the rank of Captain at his or her discretion, without cause."  Id. at 8-9.  That argument was based on two principal grounds.  The first was the District Personnel Manual

("DPM"), which states in relevant part: "Assistant Chiefs of Police, Commanders, and Inspectors are excepted service employees, who serve at the pleasure of the Chief of Police. The Chief of Police has the discretion to return Assistant Chiefs of Police, Commanders, and Inspectors to their previous rank/position." 6 D.C.M.R. § 872.5. OEA was unimpressed with that contention. It construed that regulation to apply only to Excepted Service Commanders. See OEA Decision at 8. And if, in the alternative, the Manual did apply to all Commanders, it was a municipal regulation that conflicted with the enabling statute, and it was therefore invalid in any event. Id.

Finally, MPD attempted to take refuge under D.C. Code § 1-608.01 (d-1), which provides:

> For members of the Metropolitan Police Department and notwithstanding § 1-632.03(1)(b) or any other law or regulation, the Assistant and Deputy Chiefs of Police and inspectors shall be selected from among the captains of the force and shall be returned to the rank of captain when the Mayor so determines.[2]

Although that provision does not explicitly mention Commanders, OEA took note of "MPD General Order 101.9 . . . which was first promulgated in 1979 and continues in effect to the present," and which states that "District Commanders shall be of the rank of Deputy Chief." Id. at 8. Thus, OEA evidently agreed with MPD that "some Commanders may indeed be returned to the rank of Captain at the Police Chief's discretion." Id. Although it is not entirely clear, however, OEA apparently concluded that subsection (d-1) also applied only to Excepted Service Commanders, because it dismissed MPD's ultimate argument as "absurd," stating that it would "render the distinction between Career Service employees and 'at-will' employees meaningless."

---

[2] As noted below, the District now makes a different argument based on the so-called "notwithstanding clause" of § 1-608.01 (d-1). Evidently, however, MPD did not present that argument to OEA during the initial summary judgment phase, nor, for that matter, did the District raise the argument in earlier rounds of briefing in this proceeding.

Id. at 9.

In sum, OEA found that Hoey "was demoted without cause . . . under the mistaken assumption by [MPD] that he was an 'at-will' Excepted Service employee."  Id. at 10.  Instead, OEA concluded that Hoey was a Career Service employee, and he was thus entitled to the "property interest" that the CMPA provides to such employees.  That interest includes the right to "only be disciplined for cause" and to receive prior notice of any pending adverse disciplinary action.  Id.  Because it was undisputed that Hoey was not disciplined for cause, OEA ordered that he be reinstated "to his Career Service position of record . . . and reimburse[d] . . . all pay and benefits lost as a result of the demotion."  Id.  The Initial Decision issued by OEA was scheduled to become final automatically after thirty-five days unless a petition for review was lodged before the expiration of that period.  MPD timely filed such a petition on January 17, 2008.  See Defs.' Notice of Filing, Dckt. #34 Ex. A.

Meanwhile, the parties continued to litigate vigorously in the present case, filing numerous briefs, notices, supplements and the like before this Court.  The parties' outstanding motions are now ripe for decision.  Hoey has moved for partial summary judgment on Counts III and IV of his Amended Complaint.[3]  Count III requests a declaration that the demotion without cause violated Hoey's constitutional rights.  Count IV seeks an injunction restoring him to the rank of Commander with all commensurate back pay and lost benefits.  Defendants have moved to dismiss, or in the alternative for summary judgment on, all counts of the Amended Complaint.

---

[3] Defendants assert that Hoey's partial summary judgment motion is no longer viable because it was filed prior to amending the complaint.  Defs.' Suppl. Reply at 1-2.  They argue that the motion is accordingly moot.  The Court need not decide this question because, as explained below, it will deny Hoey's motion in any event because he has not exhausted his administrative remedies.

They argue, among other things, that: (1) Hoey was an at-will employee subject to demotion at any time and for any, or no, reason; (2) even if Hoey was a Career Service Commander, he could still be demoted without cause to the rank of Captain; and (3) Hoey failed to exhaust his administrative remedies before filing the instant lawsuit.  As detailed below, the Court agrees with defendants on their final contention.

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).  Hence, although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is impossible, and 'that a recovery is very remote and unlikely,'" id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the "threshold requirement" of Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to

relief,'" id. at 1966 (quoting Fed. R. Civ. P. 8(a)(2)).

    The notice pleading rules, however, are not meant to impose a great burden on a plaintiff.

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A.,

534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to

dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics &

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968

(D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Bell Atl. Corp., 127 S. Ct. at

1965)).  The plaintiff must be given every favorable inference that may be drawn from the

allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if

such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept

legal conclusions cast in the form of factual allegations."  Kowal v. MCI Commc'n Corp., 16

F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837

(D.D.C. 1996) (citing Papasan, 478 U.S. at 286).

    Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by identifying those portions of "the pleadings, the discovery and disclosure materials on

file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material

fact.  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## DISCUSSION

The Fifth Amendment of the United States Constitution, of course, precludes the government from depriving citizens of their property interests without due process of law.  It is well established that in some instances an individual's "employment with a state or local government constitutes a property interest."  Fonville, 448 F. Supp. 2d at 26 (citing Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985)).  An employee obtains a cognizable property interest in continuing employment when he or she has a "legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  The interest does not arise from the Constitution itself but from "independent source[s] such as state law."  Id.  The CMPA creates such an interest for Career Service employees.  See Fonville, 448 F. Supp. 2d at 26 ("It is undisputed that the [CMPA] creates a property interest for employees governed by it.").  By

ensuring that Career Service employees may only be terminated (or otherwise disciplined) for cause and after adequate notice, the CMPA bestows upon Career Service employees a "legitimate claim of entitlement" to their continued employment that gives rise to a property interest protected by the Due Process Clause.  See Laurence H. Tribe, American Constitutional Law 697 (2d ed. 1998) (noting that public employees have a due process property interest in employment "only if the law or contract defining the employee's job expressly provides that the employee can be discharged only for cause").  A Career Service employee may attempt to vindicate a deprivation of that interest by way of a § 1983 claim.

In this case, the District urges that Hoey is not shielded by the provisions of the CMPA because he was an Excepted Service employee.  Hoey, by contrast, insists that he joined MPD as a Career Service employee and remained such throughout his entire tenure with the organization. The stakes are high for Hoey on this determination.  If he is not covered by the CMPA and is instead an at-will employee, then his demotion to the rank of Captain would trigger no due process property interest and he would have no cause of action pursuant to 42 U.S.C. § 1983.  On the other hand, if Hoey is indeed a Career Service employee shielded by the provisions of the CMPA, then his § 1983 claim may move forward, subject to the requirement that he first exhaust his administrative remedies.  But the Court need not decide this question here.[4]  Even assuming

---

[4] Although the Court need not decide this issue, there are strong reasons to doubt the District's contention that Hoey was not a Career Service employee at the time of his demotion. The District's initial argument appears to be that the rank of Commander is an Excepted Service position per se.  But the very provision of the D.C. Code that the District cites to support that argument appears to undermine its position.  D.C. Code § 1-608.01(d-2)(1) provides:

The Chief of Police shall recommend to the Director of Personnel criteria for Career Service promotions and Excepted Service appointments to the positions of Inspector, Commander, and Assistant Chief of Police that address the areas of education,

that Hoey is a Career Service employee fully covered by the terms of the CMPA, his claim must

still be dismissed because he has failed to exhaust the administrative remedies provided by that

status.

In federal court, state administrative exhaustion requirements are considered "non-

jurisdictional." Washington v. District of Columbia, -- F. Supp. 2d --, 2008 WL 706988 at *3

(D.D.C. Mar. 18, 2008) (citing Johnson v. District of Columbia, 368 F. Supp. 2d 30, 36 (D.D.C.

2005)); cf. Burton v. District of Columbia, 835 A.2d 1076, 1079 (D.C. 2003) ("While the

exhaustion doctrine is well established and of long standing, both in CMPA cases and generally,

---

experience, physical fitness, and psychological fitness.  The recommended criteria
shall be the same for Career Service promotions and Excepted Service appointments
to these positions.

In an impressive feat of selective reading, the District emphasizes only the clause concerning
"Excepted Service" but ignores the rest of the text, which explicitly states that the positions of
Inspector, Commander, and Assistant Chief of Police may be filled via "Career Service
promotions." Indeed, § 1-608.01(d-2)(1) goes on to state that the criteria for selection for those
positions shall be the same for both Career Service promotions and Excepted Service
appointments. The District's position conflates those two separate concepts and would thus
reduce much of the text of § 1-608.01(d-2)(1) to mere surplusage. The District's additional
argument that municipal regulations, such as 6 D.C.M.R. § 872.5, support its contention that all
Commander slots are Excepted Service positions is also suspect since any such regulations are
invalid because they conflict with the D.C. Code. That is the very holding of Fonville: "This
regulation . . . clearly conflicts with the enabling statute." 448 F. Supp. 2d at 27. The District's
reliance, in supplemental briefing, upon Sims v. District of Columbia, 933 A.2d 305 (D.C. 2007),
is also misplaced. Simply put, Sims is inapposite here: that case involved a Career Service
employee who was improperly promoted to an exclusively Excepted Service position without
first waiving his Career Service rights. Id. at 307-08. That is not the case here; as explained
above, the title of Commander can be held by either a Career Service or Excepted Service
employee. The fact that Hoey did not sign a waiver of his Career Service rights prior to
assuming that rank (and the rank of Inspector before that) only serves to reinforce the conclusion
that he filled a Career Service Commander slot and thereby obtained the accompanying property
rights. Indeed, the District's final argument, raised for the first time in the reply to its
supplemental filing, based on the "notwithstanding clause" contained in D.C. Code § 1-608.01(d-
1), appears to concede implicitly that Hoey was a Career Service employee.

that doctrine is simply a rule of judicial administration rather than a jurisdictional requirement."). Nevertheless, a failure to exhaust state administrative remedies implicates "federalism and comity considerations . . . tilting the scales . . . in favor of requiring exhaustion." Washington, 2008 WL 706988 at *3 (citing Moore v. City of East Cleveland, Ohio, 431 U.S. 494 (1977)). Where, as here, a plaintiff neglects to exhaust fully his available state administrative remedies, dismissal for "failure to sufficiently plead a necessary element of a federal cause of action" is appropriate. Id. (citing Hidalgo v. FBI, 344 F.3d 1256, 1259-60 (D.C. Cir. 2003)); Johnson, 368 F. Supp. 2d at 36 ("A plaintiff's failure to demonstrate that he or she has satisfied this condition, then, is tantamount to a failure to sufficiently plead a necessary element of a federal cause of action.").

In this case, Hoey's § 1983 claim is premised on the fact that he was deprived of his constitutionally protected property interest in his employment at the rank of Commander without due process of law. As in Washington, Hoey complains of the "failure of [MPD and Lanier] to properly adhere to the CMPA's requirements for disciplinary actions." 2008 WL 706988 at *6. But the CMPA itself provides a remedy for that very transgression: appeal to OEA. Indeed, Hoey did exactly that and prevailed before the OEA hearing officer. His problem, however, is that decision never became final because it was timely appealed by MPD. That proceeding before the OEA is now under way. To date, then, there has not been a Final Decision issued. Thus, the administrative process is not complete. And, accordingly, it is entirely evident that Hoey has not exhausted the available state remedial process that directly addresses defendants' alleged unlawful actions.

Hoey argues that administrative exhaustion is not a prerequisite to a § 1983 action. See

Pl.'s Opp'n & Cross-Mot. at 15-16 (citing Patsy v. Board of Regents, 457 U.S. 496 (1982)). While that is ordinarily the case, defendants correctly point out that an exception to that principle applies where a plaintiff seeks to vindicate procedural due process rights. See Defs.' Reply at 3; see also Washington, 2008 WL 706988 at *6; Stanley v. Proctor, No. 98-2780 at *4 (D.D.C. Dec. 9, 2002); Alexis v. District of Columbia, 44 F. Supp. 2d 331, 343 (D.D.C. 1999). And those rights are precisely what Hoey is attempting to protect via his § 1983 claim; his contention to the contrary is without merit. Hoey insists that he is not "seeking relief through procedural due process." Pl.'s Reply at 3. Instead, he maintains, he aims for a "declaration that he has been deprived of a substantial property right." Id. at 4. But the Constitution only protects against deprivation of property rights, substantial or otherwise, without due process of law. Put another way, it is the process that the Fifth Amendment seeks to protect, not some absolute rights in specific property. In fact, if Hoey is not attempting to vindicate procedural due process rights, it is unclear what constitutional rights he alleges have been infringed.

Hoey's next objection to holding him to the exhaustion requirement is also unavailing. Defendants, Hoey argues, "[h]aving submitted their arguments as to why Plaintiff is not a Career Service employee . . . have consented to this Court determining the issue." Pl.'s Reply at 7. In turn, the argument goes, because defendants have effectively "invited [a] federal court to rule on state law," they "have waived any potential argument that exhaustion of administrative remedies is appropriate in this case." Id. at 5. Tellingly, however, Hoey offers neither authority nor persuasive reasoning to support that assertion. In fact, if the Court accepted Hoey's contention -- which it does not -- any argument made in the alternative could amount to "consenting" to something else. That is plainly an unacceptable result.

This case is indistinguishable from <u>Washington</u>, <u>Stanley</u>, and <u>Alexis</u>. In fact, <u>Alexis</u> involved almost this exact procedural posture: there, the plaintiff had obtained "an OEA Initial Decision and then attempted to sue in an Article III court without obtaining an OEA Final Decision." 44 F. Supp. 2d at 343. The court concluded that the plaintiff "was obligated to obtain an OEA Final Decision on his due process claim before seeking judicial relief in this court." <u>Id.</u> Accordingly, the court dismissed the plaintiff's claim of a "due process property interest violation." <u>Id.</u> So, too, in <u>Stanley</u>. In that case, relying upon <u>Alexis</u> and a host of decisions from the U.S. Courts of Appeals, the court held that: "If a D.C. employee believes that he or she has been deprived of a property interest in continued employment without due process and files an OEA complaint, that individual must exhaust all administrative remedies prior to filing suit in federal court." <u>Stanley</u>, No. 98-2780 at *6. Because the plaintiffs there had "failed to obtain final administrative decisions before seeking relief here, they failed to exhaust their administrative remedies," and their § 1983 claims were accordingly dismissed. <u>Id.</u>

Most recently, in <u>Washington</u> the court declared that "[c]ouching [a] claim in constitutional terms will not immunize it from dismissal pursuant to the exhaustion requirement." 2008 WL 706988 at *6. Thus, because the "[CMPA] and constitutional claims are 'premised on the same facts' and 'the administrative process [is] fully capable of granting full relief,' exhaustion is required."[5] <u>Id.</u> (quoting <u>Nat'l Treasury Employees Union v. King</u>, 961 F.2d

---

[5] The <u>Washington</u> decision contains a thorough discussion concerning the adequacy of the remedies available under state administrative processes and whether they provide "full" relief. Some courts have evidently found that the mere request for punitive damages in a complaint may preclude dismissal for failure to exhaust because under the CMPA, OEA is not authorized to award punitive damages; thus, in some sense, relief is not identical to the potential judicial remedies and hence not "full." <u>See, e.g.</u>, <u>Crockett v. D.C. MPD</u>, 293 F. Supp. 2d 63, 67 (D.D.C. 2003). Here, plaintiff has requested punitive damages, and although he does not argue that his

240, 243 (D.C. Cir. 1992)).  The court then dismissed the due process claims because significant

issues had "yet to be raised in the plaintiffs' petition of appeal to the OEA," which illustrated

"that administrative remedies for these alleged violations have not been exhausted."  Id.

At bottom, Hoey is concerned that adjudication before "the Office of Employee Appeals

is notoriously slow, and no decision is final until resort to the Superior Court and then the

District of Columbia Court of Appeals."  Pl.'s Reply at 7.  Even if that were true, it would not be

a reason to dispense with the exhaustion requirement.  But in this case, Hoey's first principle is

faulty: here, OEA held a hearing and in fact issued an Initial Decision while the parties were still

making filings before this Court.  Indeed, the Initial Decision granted Hoey precisely the relief

that he presently requests from this Court on partial summary judgment (although, admittedly,

that relief may be stayed pending ultimate disposition of the petition for review).  And even if

this Court exercised jurisdiction over Hoey's claims, any judgment in his favor would of course

---

available administrative remedies are therefore insufficient, the Court would not be persuaded by
that contention in any event.  As the D.C. Court of Appeals has noted, "the remedies available
under CMPA are substantial and may, in some respects, afford more complete relief than the
damage remedies available at common law."  Thompson, 593 A.2d at 635.  And in addition to
adjudicating Hoey's due process complaint, the CMPA also authorizes OEA to hear related
complaints arising "out of employer conduct in handling personnel ratings, employee grievances,
and adverse actions."  Id.  Hoey's defamation and intentional infliction of emotional distress
claims fall within that category.  Affirmative relief through OEA -- and it bears repeating that
OEA's Initial Decision awarded plaintiff back-pay and costs -- would therefore effectively
deliver to Hoey all the relief he seeks before this Court save for punitive damages.  But if a
plaintiff could avoid dismissal simply by pleading for punitive damages, the exhaustion
requirement would be far too easily evaded.  The Court, therefore, rejects that result.  Here, the
administrative process is capable of granting Hoey full and adequate relief.  That available relief
need not be entirely co-extensive with judicial remedies to be deemed sufficient.  Instead,
administrative remedies need only be adequate to "right the wrong."  Randolph-Sheppard
Vendors of Am. v. Weinberger, 795 F.2d 90, 107 (D.C. Cir. 1986) ("The administrative process
is inadequate where the agency has expressed a willingness to act, but the relief it will provide
through its action will not be sufficient to right the wrong.").  That condition is satisfied here.

be subject to appeal to the D.C. Circuit and potentially to the Supreme Court. Hence, it remains the case that Hoey has failed to exhaust his administrative remedies, and his § 1983 claim will accordingly be dismissed.

The same result follows for Hoey's defamation "plus" and emotional distress claims. As the D.C. Court of Appeals has held, the exhaustion requirement applies fully to claims of defamation and emotional distress if they "aris[e] out of employer conduct in handling personnel ratings, employee grievances, and adverse actions." Thompson, 593 A.2d at 635. As that court put it:

> It would seem, therefore, from the purpose and text of CMPA, including its judicial review provisions, that the [D.C.] Council "plainly intended" CMPA to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions -- with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum.

Id. at 634. Based on that conclusion, the D.C. Court of Appeals has indicated that the CMPA "preclude[s] litigation of [a plaintiff's] emotional distress and defamation claims, in the first instance, in Superior Court." Id. at 635. Other decisions from this District Court have reached the same result. See Washington, 2008 WL 706988 at *7 ("The plaintiffs' claims alleging 'defamation plus' are also amenable to resolution through the administrative remedies provided by the CMPA. . . . D.C. courts have not hesitated to dismiss defamation and emotional distress claims to enforce this exhaustion principle."); Johnson, 368 F. Supp. 2d at 46 ("Johnson's third and sixth causes of action, entitled 'Defamation' and 'Intentional Infliction of Mental and Emotional Distress' respectively, are also likely within the ambit of administrative remedies provided by the CMPA."); Stanley, No. 98-2780 at *8 ("Furthermore, the District of Columbia Court of Appeals has specifically held that the CMPA covers defamation actions brought by a

District of Columbia employee against the District *and* his or her supervisor, and has held that

any civil suit for common law defamation must be dismissed for lack of subject matter

jurisdiction.") (citing Baker v. District of Columbia, 785 A.2d 696 (D.C. 2001)).  Hoey offers no

authority to the contrary.

      Instead, Hoey argues that his defamation and emotional distress claims are "not simply 'at

bottom an employer-employee dispute.'" Pl.'s Opp'n & Cross-Mot. at 17 (quoting Anderson v.

Ramsey, 2006 U.S. Dist. LEXIS 21034 at *25 (D.D.C. April 19, 2006)).  His claims do not

strictly concern the fact of his demotion, he contends, but rather "the disrespectful, groundless,

and public manner in which this demotion was carried out."  Id.  As Hoey would have it, then,

these two claims arise out of defendants' "post demotion conduct, when [Lanier] transferred

Hoey to the Central Cell Block and made public comments regarding his demotion."  Id. at 19.

In sum, he maintains that because the claims do "not arise out of the type of employer conduct

covered by the CMPA, [Hoey] is not preempted from pursing his common law claim[s] resulting

from that conduct."  Id.

      Hoey's characterization of his claims is not persuasive.  In Stanley, the plaintiffs alleged

that District officials made defamatory statements concerning their terminations "during the days

incident to and immediately following their termination."  See Stanley, No. 98-780 at *7.

Despite the fact that some of the statements were made post termination, the court held that they

nevertheless were "made in connection with their employment and termination."  Id.  Thus, the

court dismissed those claims for failure to exhaust administrative remedies pursuant to the

CMPA. Id. at 9. So, too, here. The allegedly defamatory[6] statements made by Lanier and Ms. Smith were in direct response to inquiries concerning Hoey's demotion. Thus, they concern an "adverse action" taken against an employee, and the D.C. Court of Appeals has held that such statements fall within the CMPA's remedial scope. Thompson, 593 A.2d at 635.

The decision in Washington is also instructive here. In that case, the court held that "allegedly defamatory remarks" concerning disciplinary action taken against the plaintiffs fell "strictly within the employment adverse action context contemplated by the CMPA." 2008 WL 706988 at *7. Indeed, the court noted that a "'supervisor's explanation of his handling of adverse employment actions, even if made outside the formal process, falls within the scope of the CMPA because the explanation relates to a personnel issue.'" Id. (quoting Sanders v. District

───────────────

[6] Plaintiff's claim here is for "defamation plus" rather than the ordinary common law tort of defamation. The Supreme Court has explained that ordinary defamation does not implicate any constitutional due process interest. See Roth, 408 U.S. at 564. On the other hand, defamation in "the course of the termination of employment," Paul v. Davis, 424 U.S. 693, 710 (1976), or government defamation that effectively forecloses future job opportunities can trigger a constitutional liberty interest. See O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998); Fonville, 448 F. Supp. 2d at 28. Those two categories, "reputation-plus" and "foreclosure" claims, respectively, are sometimes referred to generally as defamation "plus" claims. The former requires an adverse employment action in connection with "[a]ccusations of dishonesty, commission of a serious felony, manifest racism, serious mental illness, or a lack of intellectual ability . . . [to] rise to the level of a constitutional violation." Fonville, 448 F. Supp. 2d at 29. Here, Hoey claims that defendants "have engaged in behavior that rises to the level of a constitutional violation [that] meets the 'reputation plus' standard." Am. Compl. ¶ 31. The Court expresses no opinion on that contention. Instead, the Court holds that Hoey was still required to exhaust his administrative remedies before raising this claim here. The basis for the reputation-plus claim is inherently intertwined with defendants' conduct regarding the adverse employment action taken here. Hence, it is squarely within CMPA's wide sweep. Indeed, the very same question was presented in Washington. There, the court held that "even though plaintiffs dress their defamation claims in constitutional garb, they are effectively indistinguishable from common-law defamation in regards to their coverage under the remedies of the CMPA for employment disputes." Washington, 2008 WL 706988 at *8 n.5. No less is true here.

of Columbia, 16 F. Supp. 2d 10, 15 (D.D.C. 1998)).  Similarly, the plaintiffs' emotional distress

claim in Washington was predicated upon the manner in which they were terminated.  Because

"the conduct underpinning the plaintiffs' emotional distress claim arises out of plaintiffs' dispute

with their former employer," the court found that "the remedial provisions of the CMPA

govern."  Id. at *8.  Thus, the claims were dismissed for failure to exhaust.

    Once again, this case is indistinguishable from the authority discussed above.  Hoey's

defamation claim is based on statements made by Lanier and other District officials concerning

the supposed reasons for his demotion.  Thus, the challenged statements relate directly to his

dispute with MPD and Lanier and qualify as a personnel issue; they are therefore subject to the

remedial provisions of the CMPA.  And his emotional distress claim simply involves "the

disrespectful, groundless, and public manner in which this demotion was carried out."  Pl.'s

Opp'n & Cross-Mot. at 17.  That is precisely the sort of complaint that arises out of "employer

conduct in handling . . . adverse action."  Thompson, 593 A.2d at 635.  Hence, it too must first be

presented to OEA before Hoey may pursue judicial intervention.[7]

    In sum, because all of Hoey's claims arise out of an employer-employee dispute, he was

first required by the CMPA to present them to OEA and obtain a Final Decision from that body

before pursuing judicial relief.  It is undisputed that Hoey has not yet received a Final Decision

on his OEA complaint.  Accordingly, the Court will dismiss all of his claims without prejudice

---

    [7] As in Washington, the Court only decides that Hoey's "tort claims . . . should be
presented to the appropriate District Agency in the first instance."  2008 WL 706988 at *8 n.4
(citing Johnson, 368 F. Supp. 2d at 48).  It is conceivable, of course, that OEA may determine
that those claims fall outside of its jurisdiction.  If that is the case, Hoey may seek judicial relief
at that time.

for failure to exhaust his D.C. administrative remedies.[8]

## CONCLUSION

For the foregoing reasons, the Court will deny plaintiff's motion for partial summary judgment and grant defendants' motion to dismiss. A separate Order accompanies this Memorandum Opinion.

/s/

JOHN D. BATES

UNITED STATES DISTRICT JUDGE

Date: March 31, 2008

_____

[8] Hoey's final argument is that res judicata should attach to OEA's Initial Decision, thereby barring any re-litigation here. There is no merit to that contention. The Initial Decision, by its very terms, did not become final owing to MPD's appeal, which is currently pending before the agency. The D.C. Circuit has cautioned that "care should be taken in dealing with judgments that are final, but still subject to direct review. This is particularly so . . . where appeals from administrative adjudication are in progress." Martin v. Malhoyt, 830 F.2d 237, 264-65 (D.C. Cir. 1987). Here, not only is the appeal still pending before OEA, but the Initial Decision is self-evidently non-final. There is no basis to attach a preclusive effect to a non-final agency decision in an on-going adjudication.